**AMALGAMATED ASS'N OF STREET, ELECTRIC RY. AND MOTOR COACH EMPLOYEES OF AMERICA, LOCAL DIVISION 1210 v. PENNSYLVANIA GREYHOUND LINES, Inc.**

No. 10475.

United States Court of Appeals, Third Circuit.

Argued Oct. 2, 1951.

Filed Nov. 6, 1951.

M. Herbert Syme, Philadelphia, Pa., for appellant.

Theodore Voorhees, Philadelphia, Pa. (F. Hastings Griffin, Jr. and Barnes, Dechert, Price, Myers & Clark, all of Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY, and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This appeal requires that we decide whether arbitration, as prescribed by the parties in a written collective bargaining agreement, can be enforced by a federal court under Section 4 of the Arbitration Act as codified and reenacted as Title 9 of the United States Code, [1] and, if so, whether petitioner has made out a claim for relief.

A collective bargaining agreement between appellant, hereinafter designated as Local 1210 or the union, and appellee, here-inafter designated as Greyhound Lines or the company, provided for arbitration of disputes arising thereunder. There came a time when Local 1210 submitted to Greyhound Lines in writing a grievance relating that the company had announced and posted bid sheets for certain new runs without obtaining the approval of the union. In reply the company asserted that it had acted in compliance with the applicable provision of their collective bargaining agreement by consulting with proper representatives of the union prior to the posting and therefore, that no question of violation of the terms of the agreement was presented. A further exchange of letters ensued in which a request by the union for arbitration was refused, the company reiterating its prior stand. The foregoing correspondence was then incorporated by reference into a complaint filed in the district court by Local 1210 in an effort to obtain an order pursuant to Section 4 of the Arbitration Act directing the company to arbitrate the alleged dispute. A motion to dismiss "because the petition fails to state a claim upon which relief can be granted and because the Court has no jurisdiction under the Arbitration Act" was granted without opinion. This appeal followed.

Our first consideration, the reach of the statute,[2] involves two separate questions of the construction to be placed on language which appears in Section 1 of the Arbitration Act,[3] as it has been codified and re-

---

[1] Originally 43 Stat. 883 (1925) 9 U.S. C. § 4 (1946 Ed.); now, 9 U.S.C. § 4 (1946 Ed., Supp. I).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. * * * "

[2] The jurisdictional requirements of Section 4 were met by allegations of diversity of citizenship and matter in controversy exceeding $3000.00.

[3] "§ 1. 'Maritime transactions' and 'commerce' defined; exceptions to operation of title

" 'Maritime transactions', as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; 'commerce', as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, * * * but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

enacted as Title 9 of the United States Code.[4]

The text of Section 1, as originally enacted in 1925, appeared without section number immediately after the enacting clause. It began with definitions of the phrase "maritime transactions" and the word "commerce". These definitions were separated by a semi-colon. The second definition, that of "commerce" was followed by a comma and this language: "but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

The sections which followed contained the operative provisions of the statute. Section 2 declared valid and enforceable written arbitration agreements in maritime transactions or in contracts evidencing transactions in commerce. Section 3 provided for judicial action staying proceedings designed to litigate issues covered by precedent written agreement to submit to arbitration. Section 4 gave district courts power on appropriate petition to compel arbitration where the controversy was within federal jurisdiction and the written agreement of the parties called for arbitration.

In applying these several provisions of the statute, courts have had occasion to decide whether the phrase "nothing herein contained" as it appeared in the excepting language of the first section meant "nothing in this statute", "nothing in this section", or "nothing in the foregoing definition of commerce". For present purposes, it will not be necessary to distinguish between the last two alternatives.

In cases arising under Section 3, as originally enacted, this court held that the quoted language of exception qualified merely the preceding definition of commerce and only to that extent affected the rest of the Act. Donahue v. Susquehanna Collieries Co., 1943, 138 F.2d 3, 149 A.L.R. 271; Watkins v. Hudson Coal Co., 1945, 151 F.2d 311. We read the words "nothing here-

in contained" as meaning "nothing in the foregoing definition of commerce". However, in a case arising under the same section, the Court of Appeals for the 6th Circuit took the opposite view reasoning that the ambiguous phrase meant "nothing in this statute". Gatliff Coal Co. v. Cox, 1944, 142 F.2d 876.

With the Courts of Appeals thus divided on the construction of the exception, Congress, in 1947, reenacted and codified the Arbitration Act as Title 9 of the United States Code. The text was not changed. But the catchline which the compilers of the United States Code had inserted at the beginning of Section 1 of the Arbitration Act when it was included as Section 1 in Title 9 of the Code, and which had not appeared in the original Act, was now "enacted into positive law" as follows: "§ 1. 'Maritime transactions' and 'commerce' defined; exceptions to operation of title".

This history considered, the company contends and the district court apparently decided that by the newly enacted catchline to Section 1, Congress resolved the disagreement between circuits and approved the construction theretofore placed on the excepting language by the 6th Circuit. Moreover, since the codification the Court of Appeals for the 4th Circuit has adopted the construction of the 6th Circuit, although upon reasoning which indicates that it would have done so even under the original enactment. International Union United Furniture Workers v. Colonial Hardwood Flooring Co., 4 Cir., 1948, 168 F.2d 33.

Unquestionably, the original text was ambiguous. Enacting a catchline rather than amending the text is an unusual method of removing ambiguity in a text. But in this case we think the enactment serves that purpose. The only alternative would be to declare that the catchline is without significance. But we are unwilling to hold that language enacted by Congress has no meaning when the words used and the circumstances of their employment suggest a meaning that is neither unreasonable nor far fetched.

4. Title 9 of the United States Code, 1946 Ed., which contained the provisions of the Arbitration Act was codified and enacted into positive law by the Act of July 30, 1947, ch. 392, 61 Stat. 669. By the same Act the Arbitration Act of 1925 was repealed.

■ Accordingly, we conclude that our earlier construction of the exception is inconsistent with the intention of Congress as subsequently made manifest. For that reason we now abandon that construction and hold that the words "nothing herein contained" mean "nothing contained in Title 9". It follows that arbitration of a dispute arising out of a "contract of employment" cannot be required under that Title.

There remains to be considered whether the exception of "contracts of employment * * * of workers engaged in * * * interstate commerce" from the scope of the Act was intended to include collective bargaining agreements. Decision that such inclusion was intended is necessarily implicit in Gatliff Coal Co. v. Cox, supra and International Union United Furniture Workers v. Colonial Hardwood Flooring Co., supra. We did not have occasion to decide the issue in the Donahue v. Susquehanna Collieries Co. and Watkins v. Hudson Coal Co. cases, both supra.

Denying such inclusion, the union emphasizes "of employment" in its analysis of the phrase "contract of employment". Strictly speaking, it contends, a collective bargaining agreement constitutes merely the framework within which employment is effectuated, while the narrower business of hiring or firing is the essence of employment itself. If the questioned phrase had read "contracts of hire" there might be merit to this contention. But "contracts of employment" is not a term of art. Its adoption to comprehend collective bargaining agreements is not less familiar in judicial usage than in general parlance. See Donahue v. Susquehanna Collieries Co., 3 Cir., 1947, 160 F.2d 661, 662; Steadman v. Atlantic Coast Line Ry., 4 Cir., 1943, 138 F.2d 691; Dooley v. Lehigh Valley R. Co., 1941, 130 N.J.Eq. 75, 81, 21 A.2d 334, 338; Goyette v. C. V. Watson Co., 1923, 245 Mass. 577, 587, 140 N.E. 285, 288. We find no compelling reason for a narrower construction here.

■ Our attention has been directed to Justice Jackson's statement in J. I. Case v. N. L. R. B., 1944, 321 U.S. 332, 334–335, 64 S.Ct. 576, 88 L.Ed. 762, to the effect that collective bargaining agreements are not contracts of employment. But this reference is inapposite because the factual context of that case necessitated the drawing of a distinction between collective as opposed to individual contracts of employment.[5] There is no similar compulsion in the context of the Arbitration Act. Contrariwise, the most plausible explanation for the exclusion of contracts of employment from the reach of the Act supports a construction that would give to the words their normally comprehensive significance. Widespread dissatisfaction with compulsion from the federal bench in labor disputes during the era in which the statute was passed[6] was paralleled by the existence of administrative rather than judicial machinery for settlement of labor disputes in the case of both "classes of workers" specified in Section 1. See 17 Stat. 267 (1872), 46 U.S.C.A. § 651 et seq. (1946) (seamen); 38 Stat. 103 et seq. (1913); 41 Stat. 469 et seq. (1920); 44 Stat. 577 (1926), 45 U.S.C.A. § 151 et seq. (1946) (railroad employees). For Congress to have included in the Arbitration Act judicial intervention in the arbitration of disputes about collective bargaining involving these two classes would have created pointless friction in an already sensitive area as well as wasteful duplication. It is reasonable, therefore, to believe that the avoidance of an undesirable consequence in the field of collective bargaining was a principal purpose of excepting contracts of employment from the Act. In these circumstances the phrase "contracts of employment" should be construed to include collective bargaining agreements. Finally, while the situation existing in cases of seamen and railroad employees clarifies the meaning of the statute its terms also include "any other classes of workers"

5. Justice Jackson was careful to point out that "Contract in labor law is a term the implications of which must be determined from the connection in which it appears." 321 U.S. at page 334, 64 S.Ct. at page 579.

6. The familiar Norris LaGuardia Act, 47 Stat. 70 (1932), 29 U.S.C.A. § 101, was the national legislative culmination of this dissatisfaction.

in interstate commerce. Such a class is involved here.

Having concluded that the district court properly dismissed the complaint because the Arbitration Act denied it jurisdiction over the subject matter we find it unnecessary to decide whether the particular dispute stated in the complaint is embraced by the agreement of the parties to arbitrate.

The judgment of the court below will be affirmed.