Donald SHARPE

v.

CAROLINA FREIGHT CARRIERS CORP.

and

Local 107 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America.

Civ. A. No. 71–670.

United States District Court,
E. D. Pennsylvania.

Feb. 15, 1972.

---

Jack M. Myers, Zack & Myers, Philadelphia, Pa., for plaintiff.

John W. Pelino, Pelino, Wasserstrom, Chucas & Monteverde, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

HANNUM, District Judge.

This is an action to vacate an Arbitration Award. Jurisdiction is based upon Section 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, June 23, 1947, 29 U.S.C. § 185. Plaintiff specifically asks this Court to order a new arbitration hearing.

The defendant Carolina Freight Carriers Corp. (hereinafter called "Carolina") and Local 107 of the International Brotherhood of Teamsters, Chauffeurs,

Warehousemen, and Helpers of America (hereinafter called "Local 107") regularly entered into collective bargaining agreements covering terms and conditions of employment. Plaintiff, Donald Sharpe, was discharged by Carolina on April 15, 1970. This action was taken pursuant to Article 45, "Discharge or Suspension", of the governing collective bargaining Agreement. The basis for the discharge was plaintiff's alleged involvement in the theft of an interstate shipment from Carolina's Terminal. On April 23, 1970, the plaintiff was given a hearing to determine whether probable cause existed in a criminal complaint charging violations of 18 U.S.C. § 659. The Honorable Tullio G. Leomporra [1] held that there was no probable cause to hold the plaintiff on the above mentioned charge. Pursuant to the grievance machinery of the contract between the defendants a hearing was held before the Philadelphia, Pennsylvania, and Vicinity Joint Area Committee on May 7, 1970, at which time the panel was unable to make a decision on the discharge of plaintiff and the matter was referred to Arbitrator William Loucks. On July 11, 1970 the Arbitrator rendered his decision which stated in part:

"The discharge of Donald Sharpe for proven dishonesty under the provisions of Article 43, Discharge or Suspension, Section 1, Paragraph (3), of the Agreement is hereby sustained as in compliance with the provisions of that Agreement." [2]

Plaintiff's claim that the arbitrator's award is illegal and beyond the scope of his authority for the following reasons:

1. The joint area committee submitted to the arbitrator the question of whether plaintiff had been discharged for "just cause." The arbitrator rendered his decision not on the question of whether or not the discharge was for "just cause," but rather on the question of whether "proven dishonesty" had been found. Accordingly, the arbitrator

1. Then U. S. Commissioner, now Magistrate.

2. Now Article 45, Section 2(b) (3).

did not answer the question submitted to him;

2. The decision of the arbitrator was not based on any testimony substantiating the allegation of "proven dishonesty" or "proven theft" beyond a reasonable doubt, but rather, in the words of the arbitrator himself, on ". . . Mr. Sharpe's own personal attitudes and behavior in the arbitration hearing";

3. Plaintiff was discharged on a Federal Complaint, charging him with a violation of Title 18, U.S.C. Sec. 659 which requires the same element of knowledge as "proven dishonesty";

4. There is no evidence in the record or otherwise, that the arbitrator was selected pursuant to the provisions of Article 44, Section 4, paragraph c, requiring a panel of ten names who are available to act as arbitrators;

5. Plaintiff was denied permission to have the attorney of his choice present and speaking in his behalf at the joint area meeting, and at the hearing before the arbitrator in violation of his constitutional rights.

Defendant, Carolina, has moved for an Order dismissing the action as to it because the Complaint fails to state a claim upon which relief can be granted or, in the alternative, for summary judgment. Carolina claims that both the Federal Arbitration Act (9 U.S.C. § 12) and the Pennsylvania Arbitration Act (5 P.S. § 173) require that an action to vacate an award must be initiated within three (3) months after the award is filed or delivered. The award under attack here was issued on July 11, 1970, and delivered immediately thereafter. This action to vacate the award was not commenced until more than nine (9) months later, on March 22, 1971.

The Court does not reach the question of whether the state or federal arbitration act would bar the relief requested by plaintiff.[3] Summary Judgment is appropriate at this time.

The applicable sections of the collective bargaining agreement are as follows:

## "ARTICLE 44—GRIEVANCE MACHINERY

### Section 1

The Union and the Employers agree that there shall be no strike, lockout, tie-up or legal proceedings without first using all possible means of a settlement as provided for in this Agreement, of any controversy which might arise.

### Section 4—Joint Area Committee

(a) The Employers and/or the Employer Associations and the Union shall together create a permanent

---

3. 29 U.S.C. § 185(a) confers jurisdiction upon federal courts over suits upon collective bargaining contracts, but it contains no provision limiting the time in which an action must be brought. In the absence of the federal statute of limitations, the United States Supreme Court has held that the applicable state statute of limitations governs. International Union, United Auto, etc. v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).

It has been previously held that the Federal Arbitration Act is inapplicable to appeals from labor arbitration awards due to the exclusion of "contracts of employment", §§ 1–4. Amalgamated Ass'n. of Street, Elec., Ry., & Motor Coach Employees of America v. Pennsylvania Greyhound Lines, Inc., 192 F.2d 310 (3d Cir. 1951).

It is not clear whether the State Arbitration Act would be applicable in the instant case. The agreement made available to the Court makes no reference to the Arbitration Act, and the record reveals no agreement between the parties that that Act was to be followed in pursuing the arbitration of grievances. See, Keller v. Local 249 of Int. Bro. of Teamsters, etc., 423 Pa. 353, 223 A.2d 724 (1966); La Vale Plaza, Inc. v. R. S. Noonan, Inc., 378 F.2d 569 (3d Cir. 1967). Some courts have held or intimated that to adopt the state statute of limitations in the context of the present lawsuit is consistent with federal labor policy. See, Hill v. Aro Corp., 275 F. Supp. 482 (D.C.N.Ohio, 1967); Haverton v. J. Christenson Co., 76 L.R.R.M. 2937 (N.D.Calif.1971)

Joint Area Committee which shall consist of an equal number of representatives appointed by the Employers or the Employer Associations, and by the Unions (Locals: 107, 312, 326, 331, 384, 470, 500 and 676) or a panel thereof. This Joint Area Committee shall meet at established times and at a mutually convenient location. The Joint Area Committee shall at its first meeting formulate rules of procedure to govern the conduct of its proceedings.

(b) Where the Joint Area Committee is unable to agree or come to a decision on a case other than discharge, it shall, at the request of the Union or the Employer involved, be appealed to the Eastern Conference Joint Area Committee at the next regularly constituted session.

(c) Any cases deadlocked by the Joint Area Committee pertaining to the discharge of an employee, shall be submitted to an impartial arbitrator for final determination. Failure to comply with the arbitrator's award withdraws the benefits of Section 1 of this Article.

The decision of the arbitrator shall be specifically limited to the matter submitted to him and he shall have no authority in any manner to amend, alter or change any provision of this Agreement.

## ARTICLE 45—DISCHARGE OR SUSPENSION

*Section 1*

The Employer shall not discharge nor suspend an employee except for just cause. Except where the provisions of this Article provide for immediate discharge, the Employer shall not suspend or discharge an employee without first having given the Union notice by telegram of his intent to discharge or suspend such employee.

A representative of the Local Union must be in personal contact with the Employer within twenty-four (24) hours after the Employer has sent notice by telegram to the Local Union of his intent to discharge or suspend the employee.

If there is no response by a Local Union representative within the twenty-four (24) hour period, the Employer may take appropriate action subject to appeal through the grievance procedure.

*Section 2*

(a) Discharge or suspension must be for just cause and written notice of such discharge or suspension must be given to the Local Union.

(b) In respect to discharge or suspension, the Employer shall give at least one (1) written notice of such complaint against such employee to the employee and a copy of same to the Local Union except that no warning notice need be given to an employee before he is discharged if the cause of such discharge is:

1. Calling an unauthorized strike or walkout.

2. Drunkenness, drinking during working hours (including lunch time), or being under the influence of liquor or drugs during working hours (including lunch time).

3. Proven theft or dishonesty.

4. Unprovoked assault on his Employer or his Employer's representative during working hours.

5. Carrying unauthorized passengers in Employer's vehicle."

Arbitrator Loucks states in his Opinion at page 2, the following:

"Grievant Sharpe was discharged by his Employer for his alleged guilt under the provisions of Article 43, Section 1, Paragraph (3), of the parties' Agreement which provides as follows:

'In respect to discharge or suspension, the Employer shall give at least one (1) warning notice of the complaint against such employee to the employee, in writing, and a copy of the same to the Union affected, except that no warning notice need

**532**

be given to an employee before he is discharged if the cause of such discharge is:

. . . . .

'(3) Proven theft or dishonesty.'

The discharge of employee Sharpe, classified as a Driver-Checker, was grieved by the Union and carried through the parties' pre-arbitration joint facilities for resolution of such grievances without a mutually agreed termination thereof. Under date of May 7, 1970, the Philadelphia, Pennsylvania and Vicinity Joint Area Committee made a Submission to Arbitration, jointly signed, which contained the following record of its action on the grieved Sharpe discharge:

'Decision: Panel met in Executive Session where a motion was made and seconded that claim of the Union be denied and that the discharge of Sharpe was for just cause. Motion did not carry. Referred to Arbitrator Wm. Loucks.' "

■ Even assuming the matter referred to Arbitrator Loucks was limited to the question of whether plaintiff, Sharpe, was discharged for just cause, under the contract "proven theft or dishonesty" is one of several offenses specifically recognized as constituting "just cause" for discharge.

As a preliminary matter, in Arbitrator Loucks' Opinion he states:

"Grievant Sharpe was discharged for 'proven . . . dishonesty,' as this is contractually stated as a proper cause of discharge under Article 43, Section 1, Paragraph (3), of the parties' Agreement. The import of this emphasis upon the exact portion of this contract provision on which the Employer proceeded against Sharpe is that (1) the Employer is under no obligation to supply any evidence pertaining to an act of *'theft'* by Sharpe *per se* in order to have Sharpe's discharge sustained; (2) the Employer must supply evidence preponderantly sustaining an act of 'dishonesty' on the part of the grievant before the

discharge can validly be sustained under the terms of the Agreement; ■ the concept 'proven . . . dishonesty' obviously is a broader concept than 'proven theft,' involving as it may a rather wide range of actions, or possibly inactions, on the part of a dischargee as valid basis for discharge under the terms of the Agreement; and (4) it follows that, in a matter of ascertaining the absence or the presence of 'proven . . . dishonesty,' there reside in the Arbitrator certain inherent elements of judgment which normally may not be present in the arbitration of a contractual validity of a discharge for 'proven theft'— elements of judgment which the Arbitrator must exercise with careful protection of the dischargee's right to be regarded as innocent of 'proven . . . dishonesty' until a clear preponderance of the evidence persuades beyond any reasonable doubt that he is guilty."

■ Dishonesty, implies a wilful perversion of the truth in order to deceive, cheat, or defraud. Active or passive involvement in a theft or attempted theft of employer property or property under his care is dishonest. Although the penalty of discharge is severe, criminal liability is not at issue here. The Arbitrator had considerable difficulty in resolving this case. The fact that Mr. Sharpe's own personal attitude and behavior in the arbitration hearing was weighed in the decision does not erode its validity.

■ The record reflects that the selection of Arbitrator Loucks was from a panel of mutually acceptable Arbitrators established by agreement.

■ Although plaintiff did not have personal counsel at either the Joint Area Committee Meeting or the Arbitration Hearing, he does not claim that Local 107 failed to protect his interests. At the Joint Area Committee Meeting the panel consisted of three (3) employer and three (3) Union representatives. Also present were two (2) secretaries,

one (1) employer and one (1) union. Appearing on behalf of Carolina was their Regional Operations Manager. Appearing for Local 107 was their Business Agent, Shop Steward, and the Grievant, Donald Sharpe. At the Arbitration Hearing both the employer and union were represented by counsel. A full day was taken by the respective parties in presentation of evidence and oral argument on the issue of contractual propriety or impropriety of the discharge of Sharpe. Therein, grievant, Sharpe, under the questioning of Union and Employer counsel, testified at length on the various aspects of the incident leading to his discharge. Plaintiff does not claim that the Local 107 breached its duty of fair representation, nor is such a breach apparent from this record. In fact, plaintiff's Complaint mentions no allegations that Local 107's conduct toward him was either arbitrary, discriminatory, or in bad faith. Nor is there any evidence or charges of corruption, fraud, partiality, or other misconduct on the part of the Arbitrator or anyone else involved in this case. Nor is it apparent that the Arbitrator exceeded his power under the contract.

In the *Steelworkers'* trilogy,[4] the Supreme Court made it clear that the national labor policy favors the settlement of all labor disputes through arbitration.

As was stated in *Enterprise*:

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. As we stated in United Steelworkers of America v. Warrior Gulf Navigation Co., [ante] 363 U.S. p. 574, 80 S.Ct. 1347, decided this day, the arbitrators under these collective agreements are indispensible agencies in a continuous collective bargaining process. They sit to settle disputes at the plant level —disputes that require for their solution knowledge of the custom and practices of a particular factory or of a particular industry as reflected in particular agreements.

When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

The Supreme Court emphasized that:

"It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."

In Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3d Cir. 1969) it was stated:

"A labor arbitrator's award does 'draw its essence from the collective

4. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award."

■ In the Court's view, the arbitrator's "Opinion and Decision" does draw its essence from the collective bargaining agreement and is not in manifest disregard of the agreement. The concept of "proven dishonesty" involves a broad range of acts or omissions which may justify the discharge of an employee. As long as the employee can fairly present and argue his case before the arbitrator and the proceeding is in all other respects regular we are not disposed to substitute our opinion for that of the arbitrator.