**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL NO. 36, AFL–CIO,**

v.

**OFFICE CENTER SERVICES, INC., Appellant.**

**No. 81–1532.**

United States Court of Appeals, Third Circuit.

Argued Oct. 30, 1981.

Decided Jan. 12, 1982.

Rehearing and Rehearing In Banc Denied Feb. 8, 1982.

Howard I. Hatoff, Robert D. Kaplan (argued), Peter A. Gold, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellant.

Louis H. Wilderman, Margaret A. Browning (argued), Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for appellee.

Before ADAMS, ROSENN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The appellant, Office Center Services, Inc. (OCS), appeals from a summary judgment of the United States District Court for the Eastern District of Pennsylvania confirming an arbitration award obtained by default. The primary question presented is whether affirmative defenses which are in the nature of grounds for vacating the award may be raised in a proceeding to confirm the award under section 301 of the Labor-Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185 (1976), notwithstanding the failure to move to vacate the unfavorable award within the limitations period prescribed for actions to vacate. This question in turn requires us to decide whether the applicable statute of limitations should be determined under state law or by the formulation of a uniform federal limitations period. The Supreme Court has not directly addressed this issue and this court has not previously spoken to it. The district court rejected the employer's challenges as untimely and confirmed the award. We affirm.

## I.

OCS is a janitorial and landscaping company which performs services at the Valley Forge Executive Mall in Tredyffrin Township, Pennsylvania. It does not own, operate, or manage any buildings. OCS's employees were members of Service Employees International Union, Local No. 36, AFL–CIO (Local 36). A multi-employer association, Building Operators Labor Relations, Inc. (BOLR), negotiated a collective bargaining agreement with Local 36 on or about November 1, 1978. Although it is not clear whether OCS was a member of BOLR on November 1, 1978, OCS acknowledges that it was bound by that collective bargaining agreement.[1] In June 1979 the janitorial and landscaping services at six office buildings in the mall were awarded to another company, Supervised Services, Inc. In July OCS notified its employees and their union of this change and that it therefore was terminating the services of the employees. Thereupon, Local 36 filed a grievance against OCS alleging that the separations were impermissible under the collective bargaining agreement. The BOLR scheduled a grievance hearing for August 15, 1979.[2] OCS requested a continuance and did not attend the hearing.[3] On September 24, 1979, OCS received a letter dated September 18 from BOLR advising that the grievance committee had found in

---

1. OCS gives conflicting reports about its membership in BOLR. An affidavit of Stephen Lewis, an OCS representative, avers that since November 1, 1978, OCS has not been a member of BOLR. Mr. Lewis continues that, nevertheless, OCS "has accepted the BOLR contract." In its brief to this court OCS states that it "is a member of BOLR and has agreed to be bound by the terms and provisions of the collective bargaining agreement."

2. The contractual grievance procedure required that grievances be heard before a joint committee consisting of two representatives designated by BOLR and two designated by the union. The decision of a joint employer-union committee is enforceable under section 301 of the LMRA just as is the decision of an impartial arbitrator, if it is final and binding under the collective bargaining agreement. *General Drivers, Warehousemen & Helpers, Local 89 v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). OCS having failed to pursue the next level of the grievance process, the decision of the committee must be read as final and binding.

3. OCS contends that under its past practice the BOLR had routinely granted ex parte continuance requests and that it had relied anticipatorily on the grant of this request.

favor of Local 36.[4] By letter of September 27, 1979, OCS objected to the hearing because it was held in OCS's absence and requested a legible copy of the award. OCS received no response. The matter lay dormant until Local 36 brought the instant action to confirm the award on August 12, 1980.

Local 36 and OCS cross-moved for summary judgment. OCS raised a number of objections to the conduct of the grievance hearing and to the award.[5] As to the fifth and last objection, the district court held that Local 36's failure to attach a copy of the award to the complaint was "excusable neglect in the assembly of pleadings" and that the action was timely since the union filed the complaint within one year of the award. OCS does not appeal that decision. As to the other objections, the district court agreed with Local 36 that they were affirmative defenses that could have served as grounds in an action to vacate the award and were waived because they were not timely raised within three months of the issuance of the arbitration award.

OCS on appeal complains that the district court has fashioned a new rule of law in disallowing the raising of affirmative defenses in a confirmation proceeding. Even if the "new rule" stands, OCS asserts, its retroactive application violates due process.

## II.

### A.

In *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the Supreme Court held that because there is no statute of limitations in section 301 of the LMRA, "the timeliness of a § 301 suit . . . is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations," *id.* at 704–05, 86 S.Ct. at 1112–13 (footnote omitted), instead of a judicially fashioned uniform rule. In its footnote to the quoted sentence, the Court left open the question of whether another approach might be taken in section 301 suits other than those that resemble damage actions for breaches of contract. This footnote has led federal courts to differ on the approach to be taken to the statute of limitations question in section 301 suits to enforce or vacate arbitration awards. Although a majority of courts have applied the statute of limitations found in state arbitration statutes, *see, e.g., Sine v. Local 992, International Brotherhood of Teamsters*, 644 F.2d 997 (4th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 502, 70 L.Ed.2d 378 (1981); *Chauffeurs, Teamsters, Warehousemen & Helpers, Local 135 v. Jefferson Trucking Co.*, 628 F.2d 1023 (7th Cir. 1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981), at least two courts have held that the limitations period of the Federal Arbitration Act should be used instead of the period of any state arbitration statute in actions to vacate an arbitration award under section 301. *Lumber Production & Industrial Workers, Local 3038 v. Champion International Corp.*, 486 F.Supp. 812 (D.Mont.1980); *Communications Workers v. Pacific Telephone and Telegraph Co.*, 462 F.Supp. 736, 739 (C.D.Cal.1978).[6]

---

**4.** The grievance committee decision read:

Office Center Services acted incorrectly and should require the subcontractor to assent to the union agreement and require [the] subcontractor to rehire union members and pay them for wages lost as well as all lost fringe benefits.

**5.** The defendant's motion for summary judgment raised the following objections:

(1) The Grievance Committee deprived defendant of due process of law in the conduct of its hearing. (2) The Grievance Committee was biased and prejudiced against defendant. (3) The Grievance Committee's findings and conclusions are clearly erroneous, outside the jurisdiction of the Grievance Committee, and they do not draw their essence from the collective bargaining agreement. (4) The award of the Grievance Committee is not enforceable because it directs defendant to take action which is, and has been, beyond defendant's power and ability to do. (5) The Complaint herein was not timely filed and is barred by the statute of limitations in that plaintiff did not file a copy of the award of the Grievance Committee with the Court within one year after the date of the award.

**6.** As *Communications Workers v. Pacific Tel. & Tel. Co.*, 462 F.Supp. 736, 738–39 (C.D.Cal. 1978), noted, the Federal Arbitration Act

(Act) is a logical source for a uniform federal rule. The Act is also an expression of federal policy and thus may be used as a guide in determining whether application of a particular state statute of limitations would be inconsistent with national labor policy. *See infra* p. 409. *But cf. United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 70, 101 S.Ct. 1559, 1568, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring) (arguing that the statute of limitations embodied in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), should govern an action involving a claim based on a union's breach of its duty of fair representation brought under § 301 of the LMRA).

We need not reach the question of whether the Act is directly applicable to this dispute concerning janitorial and landscaping employees because neither party contends on appeal that it is. We pause to consider, however, whether the Act could have any bearing on the availability of remedies in suits brought to enforce labor arbitration agreements under § 301.

The Act is derived from the Federal Arbitration Act of 1925, 43 Stat. 833. That act, which was promulgated well before the events leading up to the Great Depression, the New Deal, and the establishment of a national labor policy, was intended to allow parties to commercial arbitration, previously frowned upon by the common law, to obtain judicial enforcement of their agreements to arbitrate. Its only reference to labor-related matters appears in § 1 which specifically provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1 (1976).

In *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees, Local 1210 v. Pennsylvania Greyhound Lines, Inc.*, 192 F.2d 310 (3d Cir. 1951), this court held that the Act was inapplicable to an action to enforce a labor arbitration agreement due to the statute's exclusion of "contracts of employment." We thus appeared to close the door to the enforcement of labor arbitration agreements under the Act. Two years later, however, in *Tenney Eng'r, Inc. v. United Elect. Radio & Mach. Workers, Local 437*, 207 F.2d 450 (3d Cir. 1953) (en banc), we distinguished our earlier decision in *Pennsylvania Greyhound Lines, supra*, on the ground that the busline employees of Greyhound were "directly engaged in the channels of interstate transportation just as are railway workers," and that the exclusion of the Act did not bar claims of employees "engaged in the production of goods for subsequent sale in interstate commerce." *Id.* at 453. The court therefore allowed the defendant in a § 301 suit to obtain a stay of that action pursuant to 9 U.S.C. § 3, pending arbitration of the dispute. In effect, the Act provided the substantive basis for permitting the enforcement of a labor arbitration agreement in an action brought under § 301. *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 596 (3d Cir.), *cert. denied*, 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968).

Since the landmark decisions of the Supreme Court announcing broad principles of arbitral primacy and judicial deference to labor arbitration, *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957), and the *Steelworkers Trilogy* cases, *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), parties to labor arbitration agreements have been able to enforce the terms of those agreements directly under § 301 without reference to the Federal Arbitration Act. Dissenting in *Lincoln Mills*, Justice Frankfurter observed:

> I find rejection, though not explicit, of the availability of the Federal Arbitration Act to enforce arbitration clauses in collective-bargaining agreements in the silent treatment given that Act by the Court's opinion.... I would make this rejection explicit, recognizing that when Congress passed legislation to enable arbitration agreements to be enforced by the federal courts, it saw fit to exclude this remedy with respect to labor contracts. See *Amalgamated Association v. Pennsylvania Greyhound Lines*, 192 F.2d 310 (C.A. 3d Cir.) ....

353 U.S. at 466–67, 77 S.Ct. at 925–26. Subsequent to the foregoing cases the Act has been sparingly applied to labor arbitration matters.

In part because of this infrequent use, there is a serious question as to whether the applicability of the Act to labor arbitration agreements retains any vitality in this circuit. Without explicitly disaffirming our decision in *Tenney*, in *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969), we stated that we had previously held that "the Federal Arbitration Act is inapplicable to appeals from labor arbitration awards due to the exclusion of 'contracts of employment,' §§ 1–4." *Id.* at 1124 n.18 (dictum). *See United Mine Workers v. Jones & Laughlin Steel Corp.*, 378 F.Supp. 1206, 1212 (W.D.Pa.1974) & note 9 *infra*; *Sharpe v. Carolina Freight Carriers Corp.*, 337 F.Supp. 528, 530 n.3 (E.D.Pa.1972).

Indeed, other pertinent decisions of this court since *Tenney* reflect the advancing lifelessness of the Act in labor arbitration. *See, e.g., Wilkes-Barre Publishing Co. v. Newspaper Guild, Local 120*, 647 F.2d 372 (3d Cir. 1981) (action stayed pending arbitration—no mention of the Act); *Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207 (3d Cir. 1976) (district court stay of action pending arbitration affirmed—no mention of the Act); *Mason-*

Support for application of state statutes of limitations as opposed to a uniform federal rule in actions under section 301 to confirm arbitration awards is found in *United Parcel Service, Inc. v. Mitchell,* recently decided by the Supreme Court of the United States, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). *Mitchell* involved an action to vacate an arbitration award under section 301 of the LMRA.[7] Though the Supreme Court did not address the appropriateness of using a federal instead of a state statute of limitations, it upheld the district court's application of a state statute of limitations and thus tacitly reaffirms *Hoosier Cardinal.*[8]

▮ We believe that in the instant case the district court correctly concluded that the statute of limitations of the Pennsylvania Arbitration Act should be applied. Our conclusion is supported not only by *Mitchell's* approval of the use of the applicable state statute of limitations, but because *Hoosier Cardinal's* reasoning supports that result here. In *Hoosier Cardinal,* the Supreme Court acknowledged that "a uniform

limitations provision for § 301 suits might well constitute a desirable statutory addition," 383 U.S. at 702–03, 86 S.Ct. at 1111–12, but concluded that rather than engage in "so bald a form of judicial innovation," *id.* at 701, 86 S.Ct. at 1110, the Court should follow its practice of applying the relevant state statute of limitations to a federal cause of action where Congress has not specifically provided otherwise. The Court discounted the effect of the resulting lack of uniformity among the states:

> The need for uniformity . . . is greatest when its absence would threaten the smooth functioning of those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it. For the most part, statutes of limitations come into play only when these processes have already broken down. Lack of uniformity in this area is therefore unlikely to frustrate in any important way the achievement of any significant goal of labor policy.

▮ *Dixon Lines, Inc. v. Local 560, Int'l. Bhd. of Teamsters,* 443 F.2d 807 (3d Cir. 1971) (without deciding whether Act applied concluded that relief was available, citing *Lincoln Mills*); *Local 719, American Bakery & Confectionary Workers v. National Biscuit Co.,* 378 F.2d 918 (3d Cir. 1967) (Act not directly applicable to § 301 suits) (by implication). *But see Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 397 F.2d 594 (3d Cir.), *cert. denied,* 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968) (substantive provisions of the Act applied in a § 301 LMRA suit); *Philadelphia Dress Joint Bd. v. Rosinsky,* 229 F.2d 438 (3d Cir. 1956) (denial of motion to dismiss for lack of jurisdiction affirmed on the basis of *Tenney*).

Finally, we note that even were the Federal Arbitration Act applicable in this case, based on our analysis of the cases decided under the Act, the outcome in this appeal would remain unchanged.

7. The district court applied New York's ninety-day statute of limitations to vacate arbitration awards to an employee's claim that his union had violated its duty of fair representation by inadequately representing the plaintiff at an arbitration hearing that resulted in the plaintiff's dismissal. He also charged that the employer had fired him for an improper reason. The district court ruled that the employee's

§ 301 suit was, in effect, an action to vacate an arbitration award, and, applying New York's statute of limitations for such an action, granted summary judgment for the defendant. The court of appeals reversed, holding that the state's six-year limitations period for actions alleging breach of contract should have been applied. The Supreme Court reversed and upheld the district court.

8. In response to an argument that the six-month limitations period of the National Labor Relations Act, 29 U.S.C. § 160(b) (1976), should be applied, the Court stated that the issue had not been raised below, and that certiorari had been granted "to consider *which* state limitations period should be borrowed, not whether such borrowing was appropriate." 451 U.S. at 60 n.2, 101 S.Ct. at 1562 n.2. In dictum, however, the court appears to exclude the alternative of a judicially created uniform federal rule: "Obviously, if New York had adopted a specific 6-year statute of limitations for employee challenges to awards of a Joint Panel or similar body, we would be bound to apply that statute under the reasoning of *Hoosier Cardinal.*" *Id.* at 64, 101 S.Ct. at 1564. *But see* 451 U.S. at 67, 101 S.Ct. at 1567. (Stewart, J., concurring) (*Hoosier Cardinal* does not require application of state statutes of limitations in all § 301 suits).

383 U.S. at 702, 86 S.Ct. at 1111. Similarly, in the present context the need for uniformity is not very great. Although arbitration is in some respects *sui generis* and might therefore merit distinctive treatment, actions brought to enforce an arbitral award are separate from the arbitration process itself and only come into play after the arbitration has terminated. Thus, whatever need may exist for national uniformity regarding the use of the arbitration process for the private settlement of labor disputes, the same considerations do not require similar uniformity when the judiciary is called upon to enforce an arbitral award. So long as it is not inconsistent with federal labor policies,[9] application of the state rule is pragmatic and consistent with our principles of federalism. The federal courts should not fashion a uniform limitations period simply because Congress failed to provide one. *Id.* at 703, 86 S.Ct. at 1112. Finally, we note that because we read both the federal and Pennsylvania arbitration statutes to disallow the raising of defenses which could have been raised in motions to vacate in confirmation proceedings occurring more than three months after issuance of an award, *see* pp. 410–411 *infra*, our determination that *Hoosier Cardinal* leads us to apply the state statute of limitations is not troublesome. In a case where the state statute provided an exceedingly long limitations period, arguably at odds with a policy favoring the quick and final resolution of labor disputes, the decision to adopt the state rule under section 301 would be more difficult. *See Lumber, Production & Industrial Workers, Local 3038 v. Champion International Corp.*, 486 F.Supp. 812 (D.Mont.1980).[10] We therefore conclude that actions to vacate or confirm an arbitration award under section 301 should be governed by the relevant state statute of limitations, here the Pennsylvania Arbitration Act.[11]

**9.** *See United Mine Workers v. Jones & Laughlin Steel Corp.*, 378 F.Supp. 1206 (W.D.Pa. 1974). In dismissing a motion to vacate brought eleven months after the award was made, the court read *Hoosier Cardinal* to require application of the statute of limitations of the Pennsylvania Arbitration Act so long as the statute was not inconsistent with federal labor policies:

> We think we are required by the decision in *Hoosier*, which requires reference to "appropriate" state law in fashioning statutes of limitations governing 301 actions, to apply the three-month limitation period found in the Pennsylvania Arbitration Act to this cause of action. This statute embodies the judgment of Pennsylvania concerning the period of time parties should have to appeal arbitration decisions. This time period is consistent with the national labor policy of the relatively rapid resolution of labor disputes, an important goal when a matter has already been through grievance and arbitration proceedings and finality is called for to promote stability in the employment arena.
>
> The three-month statute of limitations conforms to the time period prescribed in the Federal Arbitration Statute, which is an expression of federal policy which we cannot ignore, and with the time period enunciated in a number of other jurisdictions. Although the United States Arbitration Act does not control appeals from arbitration awards entered pursuant to collective bargaining agreement, *Amalgamated Ass'n of Street, Elect., Ry. & Motor Coach Employees of America v.*

> *Pennsylvania Greyhound*, 192 F.2d 310 (3d Cir. 1951), it is proper to refer to this statute for guidance in determining issues involved in appeals from such awards, *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1127 (3d Cir. 1969).

*Id.* at 1211–12.

**10.** In *Lumber Products*, the state statute of limitations would have allowed actions to vacate for five years after the arbitration award. The court applied the three-month limitation period of the Federal Arbitration Act, 9 U.S.C. § 12 (1976), and dismissed the action, asserting that "it is not compatible with national labor policy or national arbitration policy to delay the finality of the arbitration award for some unknown period of time which some state legislature may have prescribed." 486 F.Supp. at 813 (footnote omitted). A five-year limitation period is arguably so at odds with the general policy of speedy resolution of labor disputes that a court would be justified in disregarding the state rule in favor of some other federally derived limitations period.

**11.** The plaintiff union, Local 36, having its principal offices in Philadelphia, Pennsylvania, sought enforcement in the United States District Court for the Eastern District of Pennsylvania of an arbitration award rendered in its favor against an employer that had its principal office and place of business in Fort Washington, Pennsylvania. The services under the collective bargaining agreement on which the award was predicated were to be performed in

## B.

Having concluded that the limitations period of the Pennsylvania Arbitration Act is applicable to this dispute, we must now determine whether, as OCS argues, objections that could have been raised in a motion to vacate an award, which must be made within three months, see Pa.Stat.Ann. tit. 5, § 173 (Purdon 1963) (superseded), can be raised after that period has run as defenses in a confirmation proceeding, which enjoys a one-year limitation period, see id. § 169 (superseded). Our first source of guidance is Pennsylvania case law. In *Emporium Area Joint School Authority v. Anundson Construction & Building Supply Co.*, 402 Pa. 81, 166 A.2d 269 (1960), a case not discussed by the parties, the Supreme Court of Pennsylvania was confronted with the interaction of the three-month and twelve-month limitations periods for, respectively, actions to vacate and confirm. Although it did not directly address or discuss the raising of objections in confirmation proceedings, the supreme court did not permit a party who failed to move to vacate an award within the prescribed period to raise objections in a confirmation proceeding. In that case, a copy of the arbitration award had been delivered to the parties on December 10, 1957. The company sought confirmation on April 11, 1958, and on July 3, 1958, the school authority filed a petition to modify or vacate the award. The trial court allowed argument on both motions and modified the award. The Pennsylvania Supreme Court, quoting from section 173 of the Pennsylvania Arbitration Act to the effect that motions to vacate or modify awards must be made within three months, reversed "with directions that the petition for confirmation of the award be granted." 402 Pa. at 85, 166 A.2d at 271. Thus, it appears that under the state arbitration act Pennsylvania did not permit the untimely use of the statutory grounds for vacation or modification of an award as a defense to a motion to confirm the award.[12]

Emphasizing the similarity in language of the federal and Pennsylvania statutes, OCS relies on cases brought under the Federal Arbitration Act.[13] These cases allowed ob-

Pennsylvania. The district court correctly selected the Pennsylvania Arbitration Act, Pa. Stat.Ann. tit. 5, §§ 169 & 173 (1963) (superseded) as the state statute of limitations most appropriate to this type of action. Neither of the parties have excepted to the district court's selection of the statute and it is not an issue on appeal.

The statute governing this action has been repealed and replaced by 42 Pa.Cons.Stat.Ann. §§ 7301–7320 (Purdon Supp.1981), which is patterned after the Uniform Arbitration Act. *See* note 16 *infra*.

**12.** Pennsylvania has made a similar determination under another statute, the Public Employee Relations Act, Pa.Stat.Ann. tit. 43, §§ 1101.-101 to 1101.2301 (Purdon Supp.1965 to 1980), which governs, *inter alia*, the arbitration of disputes between the Commonwealth and its employees. In *Pennsylvania Labor Relations Bd. v. Pennsylvania*, 478 Pa. 582, 387 A.2d 475 (1978), the Pennsylvania Supreme Court held that by allowing the appeal period to pass without taking any action the State had waived its right to have its defenses to enforcement considered in the subsequent enforcement proceeding. The court gave its rationale:

> Allowing the party aggrieved by the arbitrator's decision to refuse to abide by that decision undercuts [the] strong policy favoring finality in the arbitration of labor disputes.

> It encourages the aggrieved party to ignore the normal appeal procedure, knowing that if a subsequent enforcement proceeding is brought it will provide a second opportunity to litigate the validity of the award, thus delaying the finality of the arbitration.

478 Pa. at 590, 387 A.2d at 479.

Citing *Emporium Area Joint School Auth. v. Anundson Const. & Bldg. Supply Co.*, *supra*, and *Pennsylvania Labor Relations Bd.*, the commonwealth court recently noted in another action brought under the Public Employees Relations Act, "[a] party who has not filed a timely motion to vacate, modify or correct an arbitration award, ... may not collaterally attack the merits of the award in a subsequent confirmation petition." *Association of Pa. State Colleges & Univ. Faculties v. Kline*, 427 A.2d 684, 687 n.7 (Pa.Commw.Ct.1981).

**13.** The relevant provisions of the Pennsylvania statute are similar to those of the Federal Arbitration Act. In both, an application to confirm an award must be filed within one year after it is made, 9 U.S.C. § 9 (1976); Pa.Stat.Ann. tit. 5, § 169 (Purdon 1963) (superseded); a motion to modify, correct, or vacate an award must be made within three months after the award is filed or delivered. 9 U.S.C. § 12 (1976); Pa. Stat.Ann. tit. 5, § 173 (Purdon 1963) (superseded).

jections which could have been brought in motions to vacate to be raised in actions to confirm despite the passage of the three-month limitations period for motions to vacate. *See Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*, 452 F.Supp. 573 (D.Neb. 1978); *Riko Enterprises, Inc. v. Seattle Supersonics Corp.*, 357 F.Supp. 521 (S.D.N.Y. 1973). However, as *Chauffeurs, Teamsters, Warehousemen & Helpers, Local 135 v. Jefferson Trucking Co.*, 628 F.2d 1023 (7th Cir. 1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981), points out, these cases relied on a misreading of *The Hartbridge*, 57 F.2d 672 (2d Cir.), *cert. denied*, 288 U.S. 601, 53 S.Ct. 320, 77 L.Ed. 977 (1932):

> "A careful reading of the facts in *Hartbridge* shows that a motion to confirm the arbitration award was made within one month of the award. In that context, the court indicated that a motion to vacate could still be timely filed within

the three-month period, even though filed after the motion to confirm."

628 F.2d at 1026, quoting the trial court, *Chauffeurs, Teamsters, Warehousemen & Helpers, Local 135 v. Jefferson Trucking Co.*, 473 F.Supp. 1255, 1259 (S.D.Ind.1979).[14] Thus, their persuasiveness has been severely vitiated. In the instant case, the district court relied on the rationale of *Jefferson Trucking, supra*, which presented the same question as the case at bar,[15] in holding that OCS was time-barred from raising defenses it could have raised in a motion to vacate. OCS argues that the reasoning of *Jefferson Trucking* is not applicable because in that case the Seventh Circuit was applying the statute of limitations of a different statute, the Indiana Arbitration Act.[16] However, *Jefferson Trucking* itself undercuts OCS's reliance on the difference between the language of the Indiana statute and that of the Federal and Pennsylvania Arbitration Acts.[17]

**14.** The *Hartbridge* court ruled that because the three-month limitation period did not run while the arbitrator's decision was on appeal, the limitations period had not passed. It thus did not face the question whether defenses could be raised in a confirmation proceeding after the three-month limitations period had passed. The court stated, however, that "[t]here is authority for the proposition that even after the statutory period for moving to vacate an award has expired, a party may use the statutory grounds for vacation in defense of a motion to confirm." 57 F.2d at 673–74 (citations omitted).

**15.** In *Jefferson Trucking* the union brought a § 301 suit to enforce an arbitration award made pursuant to a collective bargaining agreement. The trucking company alleged eight affirmative defenses to enforcement of the award, but the court held that the defendant's failure to move to vacate the arbitration award within the prescribed time period for such a motion precluded it from prosecuting its claim to invalidate the award. *Chauffeurs, Teamsters, Warehousemen & Helpers, Local 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1027 (7th Cir. 1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981).

**16.** The Indiana statute, modeled on the Uniform Arbitration Act, reads, " 'the court shall confirm an award, *unless within the time limits hereinafter imposed* grounds are urged for vacating or modifying or correcting the award.' " Ind.Code § 34–4–2–12, *quoted in*

*Jefferson Trucking*, 628 F.2d at 1026 (emphasis supplied by the *Jefferson Trucking* court). Thus, unlike the Pennsylvania and federal acts, OCS argues, the Indiana statute has an "explicit statutory time limit within which grounds for vacating, and identical defenses must be raised."

It should be noted that in addition to Pennsylvania, *see* note 11 *supra*, twenty-four states have adopted the Uniform Arbitration Act. *See* Uniform Arbitration Act (U.L.A.) (Table of Authorities) (Supp.1981). Thus, in at least half the states, application of the state limitations period to actions to vacate or confirm an arbitration award under § 301 of the LMRA will require a party to raise any grounds for vacating the award during the ninety–day limitations period prescribed by the Uniform Arbitration Act, § 12(b), for actions to vacate.

**17.** The court, referring to the Federal Arbitration Act, the terms of which are similar to the Pennsylvania statute, *see* note 13 *supra*, stated:

> [S]ection 12 of the Act provides that notice of a motion to vacate an award under Section 10, or to modify or correct the award under Section 11, must be served "within three months after the award is filed or delivered." 9 U.S.C. § 12. Thus, Section 9 instructs that the court "must grant" an application for confirmation unless the award is challenged within a three month period following its issuance.

628 F.2d at 1026. Thus, the Seventh Circuit apparently would have reached the same result

Like the district court we find the reasoning of *Jefferson Trucking* persuasive and not easily limited to cases decided under the Indiana statute. We agree with the Seventh Circuit that if a defendant has important defenses to an arbitration award he should raise them within the period prescribed for actions to vacate rather than wait to raise them as defenses in a confirmation proceeding.[18] Pennsylvania allows three months for bringing motions to vacate, modify, or correct an award. The relatively short statute of limitations evinces a policy of promoting finality of arbitration. As the Seventh Circuit pointed out in its interpretation of the Indiana statute, that policy would not be furthered by allowing one aggrieved by an award to sit out the period for vacating it and then challenge it when an enforcement suit is brought.

Moreover, there are sound reasons for distinguishing between the period in which a motion to vacate can be brought and the period for bringing an action to confirm. An action to vacate an award challenges the underlying *validity* of the arbitration proceeding and award. The policy of quickly resolving disputes subject to arbitration, especially labor disputes, favors a short limitations period for such challenges. Occasionally, in the implementation process, however, parties to an arbitration may be

willing or find it necessary to readjust the terms of the arbitration award before seeking its confirmation. Recognizing the realities of the marketplace, the Pennsylvania legislature may with good reason have allowed a longer period of time for the confirmation of a concededly valid award without forcing the parties to resort to judicial involvement.

■ Accordingly, we hold that in a section 301 proceeding to confirm a labor arbitration award the relevant state statute of limitations is applied, and, under the Pennsylvania statute applicable at the time of this action, the failure to raise objections within three months which could have been raised in a motion to vacate, modify, or correct the award bars raising them in confirmation proceedings held thereafter.

### III.

■ OCS argues that the district court announced a new rule which if applied to OCS is fundamentally unfair and deprives it of property without due process. The Supreme Court has held that a recently enacted statute of limitations should not be applied retroactively where its application would bar a claim that would not have been barred under prior law. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 105–08, 92 S.Ct. 349, 354–55, 30 L.Ed.2d 296 (1971).[19] *Chevron*

had it applied the statute of limitations of the Federal Arbitration Act.

**18.** This result, while not compelled by its language, is fully consistent with the wording of the Pennsylvania statute. Section 169 of the Pennsylvania Arbitration Act provides that a court "shall grant" an order confirming an arbitration award that is filed within one year of the award "unless the award is vacated, modified, or corrected as prescribed in the next two sections." Those sections, 170 and 171, set out the grounds for a motion to vacate, modify, or correct an award. It is only in § 173, not directly incorporated by reference by § 169, that the limitations period for actions to vacate, modify, or correct an award is set out. Thus, one could conclude that complying with the limitations period of § 173 is not one of the conditions for barring confirmation under § 169. However, § 173 itself makes reference to the grounds set out in §§ 170 and 171. Thus, one can properly read the time limitation of § 173

as made applicable to § 169 through §§ 170 and 171.

**19.** In *Chevron*, the Court held that its then recent decision in *Rodriguez v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), holding that Louisiana's one-year limitation on personal injury actions rather than the admiralty doctrine of laches governed actions under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.*, could not be applied to a claim which occurred more than three years before the *Rodriguez* decision where suit was also brought more than one year before *Rodriguez*. The Court rejected the argument that the plaintiff should have foreseen the change in the law:

"We should not indulge in the fiction that the law now announced has always been the law and, therefore, that those who did not avail themselves of it waived their rights."

404 U.S. at 107, 92 S.Ct. at 355, quoting *Griffin v. Illinois*, 351 U.S. 12, 26, 76 S.Ct. 585, 594,

*Oil* is consistent with a line of Supreme Court cases holding that a statute of limitations which does not allow a reasonable time for asserting claims after its enactment or amendment violates due process. *See Atchafalaya Land Co. v. F. B. Williams Cypress Co.,* 258 U.S. 190, 197, 42 S.Ct. 284, 286, 66 L.Ed. 559 (1922); *Wilson v. Iseminger,* 185 U.S. 55, 62, 22 S.Ct. 573, 575, 46 L.Ed. 804 (1902); *Terry v. Anderson,* 95 U.S. 628, 632–33, 24 L.Ed. 365 (1877). Under *Chevron Oil,* "the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Id.* at 106, 92 S.Ct. at 335 (citations omitted).[20] For OCS to prevail, it must therefore establish that application to it of the rule in this case amounts to the retroactive application of a newly announced and wholly unanticipated statute of limitations. *See Bronze Shields, Inc. v. New Jersey Department of Civil Service,* 667 F.2d 1074, 1085 (3d Cir. 1981).

OCS's claim is without merit. *Hoosier Cardinal* had plainly heralded the likelihood that the state statute of limitations would

govern actions brought under section 301 to vacate or confirm arbitration awards. And *Emporium* put OCS on notice that under the Pennsylvania statute, confirmation might be automatic once the three months allowed for motions to vacate, modify, or correct had passed. Indeed, in its brief to this court OCS asserts that federal courts in this circuit look both to the Pennsylvania act and the federal act to determine the statute of limitations applicable in section 301 actions. Thus, OCS recognized that it had an obligation to look to cases interpreting the Pennsylvania statute and not merely those interpreting the federal act.

True, at the time the arbitration award was made there were cases under the federal statute, relying on *The Hartbridge,* which had allowed motions to vacate an award in enforcement proceedings.[21] However, more recent federal cases analyzed *The Hartbridge* and challenged the authority of the cases that relied on it.[22] Thus, even the cases under the federal statute gave some warning that these defenses might not be allowed in a confirmation proceeding held more than three months after an award.

100 L.Ed. 891 (Frankfurter, J., concurring in judgment).

**20.** In deciding whether to apply a decision non-retroactively, a court must also determine whether retrospective application of the rule will further or retard its operation, and weigh the inequity imposed by its retroactive application. 404 U.S. at 106–07, 92 S.Ct. at 355.

**21.** In addition to *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.,* 452 F.Supp. 573 (D.Neb.1978), and *Riko Enterprises, Inc. v. Seattle Supersonics, Corp.,* 357 F.Supp. 521 (S.D.N.Y.1973), there were cases, including one in this circuit—*Moran v. Paine, Webber, Jackson & Curtis,* 279 F.Supp. 573 (W.D.Pa.1966), aff'd, 389 F.2d 242 (3d Cir. 1968)—with dictum to the effect that grounds for vacation could be raised in a confirmation proceeding.

Under the United States Arbitration Act a party objecting to an arbitration award must move to vacate within three months of the award [9 U.S.C. § 12], or in the alternative it may use the statutory grounds for vacation in opposition to a motion to confirm brought by the other party within one year of the award. *See The Hartbridge,* 57 F.2d 672 [2nd Cir. 1932].

279 F.Supp. at 581.

**22.** *See* pp. 410–411 *supra.* In July 1979, approximately two months before OCS received notice of the arbitration award, two district court cases had been decided reaching opposite results on whether grounds to vacate an arbitration award could be raised as defenses in a confirmation proceeding after the passage of the limitations period for actions to vacate. Each of those cases indicated that the cases decided under the federal arbitration statute which had relied on *The Hartbridge* rested on a misreading of the case. *See Chauffeurs, Teamsters, Warehousemen & Helpers, Local 364 v. Ruan Transport Corp.,* 473 F.Supp. 298 (N.D.Ind.1979); *Chauffeurs, Teamsters, Warehousemen & Helpers, Local 135 v. Jefferson Trucking Co.,* 473 F.Supp. 1255 (S.D.Ind.1979), aff'd, 628 F.2d 1023 (7th Cir. 1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). Their analysis undercut the cases relied upon by OCS and might have prompted it during the three month period following the award to rethink the strategy of not timely challenging the award in a motion to vacate.

It may be that at the time of the award in this case there were more cases holding that defenses that constituted grounds to vacate could be raised in a motion to confirm after the limitations period for actions to vacate had run than there were going the other way. But there were also cases under the federal and Pennsylvania statutes indicating that defenses not raised within the period for vacation, modification or correction could not be raised in subsequent enforcement proceedings. Thus, OCS cannot be heard to argue that the rule announced by the district court is an unheralded pronouncement which, in fairness, should not be applied retroactively. The application of the rule announced by the district court to OCS does not offend the *Chevron Oil* standard.

The judgment of the district court will be affirmed.