**PENNSYLVANIA GREYHOUND LINES, Inc. v. AMALGAMATED ASS'N OF STREET, ELECTRIC RY. AND MOTOR COACH EMPLOYEES OF AMERICA, DIVISION 1063 et al.**

Civ. No. 9728.

United States District Court
W. D. Pennsylvania.

March 31, 1953.

Theodore Voorhees and Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., Samuel W. Pringle and Dalzell, McFall, Pringle & Bredin, Pittsburgh, Pa., for plaintiff.

Jason Richardson and Frank R. Bolte, Pittsburgh, Pa., for defendants.

STEWART, District Judge.

This action, which has been before the Court on two prior proceedings [1] is brought by the Pennsylvania Greyhound Lines, Inc. against Local Division 1063 of the Amalgamated Association of Street, Electric Railway, and Motor Coach Employees of America, hereinafter called the "Union", and against certain officers and individual members of that unincorporated association, seeking damages arising out of defendants' alleged violation of a no-strike clause contained in a collective bargaining agreement. Now the case is before us on plaintiff's motion for summary judgment against the defendant union under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.

Plaintiff, in support of its motion, asserts, first, that there is no genuine issue of fact concerning the occurrence of the strike or work stoppage (which, according to the allegations in the complaint, began on May 19, 1951 and for forty-eight hours caused plaintiff's operations in the Pittsburgh Region to cease completely); and, second, that the strike or work stoppage constituted a breach of Section 6 of Article I of the bargaining agreement entered into between the Union and plaintiff, which provides:

"The parties having herein provided for the final disposition of all disputes, differences and grievances which may arise between them under and by virtue of the within labor agreement, the association agrees that it will not, nor will the employees, members of the Association, participate in any strike, slowdown, work stoppage or interruption of service called for any purpose or reason whatsoever. The Company agrees that it will not lock out its employees under any circumstances during the lifetime of this agreement."

As proof of the first assertion, plaintiff relies on the depositions filed of record which were taken of 42 members of the Union, many of whom were officers at the time of the alleged strike, and on several affidavits filed of record, made by officials of plaintiff corporation. Defendants filed

---

1. Pennsylvania Greyhound Lines, Inc. v. Amalgamated Ass'n of St. Electric Ry., etc., D.C.W.D.Pa.1951, 98 F.Supp. 789, involved the denial of defendants' motion to dismiss the complaint, but granted a stay of the proceedings pending arbitration. The Court of Appeals for the Third Circuit reversed this Court's order granting the stay of proceedings in Pennsylvania Greyhound Lines, Inc. v. Amalgamated Ass'n of St. Electric Ry., etc., 3 Cir., 1951, 192 F.2d 310. Defendants thereafter reinstated their motion to dismiss the complaint, and this Court in Pennsylvania Greyhound Lines, Inc. v. Amalgamated Ass'n of St. Electric Ry., etc., D.C.W.D.Pa.1952, 105 F. Supp. 537 granted the motion as to some parts of the complaint and denied it as to the other parts.

no depositions nor affidavits, but they made a denial of the occurrence of a strike or work stoppage in their answer to the complaint. The issue thus raised, contends plaintiff, is clearly shown by the depositions and affidavits not to be genuine, and in its brief plaintiff vigorously asserts that the testimony "establishes beyond question that the members of the Union did engage in a strike or work stoppage".

We do not agree that the testimony establishes *beyond question* that the members of the Union did engage in a strike or an actionable work stoppage. A careful reading of the 437 pages contained in the depositions does establish that there is no dispute of the fact that on May 19 and 20, 1951, the operations of plaintiff's buses were interrupted in the Pittsburgh region (which extends from Harrisburg and Gettysburg in the east to Lima and Columbus in the west), and the affidavits do indicate the extent to which the various services were disrupted in the sections comprising that area. But the depositions, if true, also support defendants' general denial that the interruption was a strike or work stoppage, for the witnesses claim that the interruption was caused by sickness. The interruption obviously did not constitute a strike or an actionable work stoppage if it was in truth caused by sickness. If the depositions are taken to be true, they disclose that some of the employees were already sick or on sick leave at the time of the interruption of service and that others reported to the Company on May 19, 1951 that they were ill and not able to work[2]; that others, although not ill themselves, failed to perform their duties, believing that the illness of others had made company schedules unworkable[3]; and that a few believed the interruption was due to the existence of grievances and strained labor relations[4].

Thus, although no dispute exists as to the fact of an interruption of operations, a dispute does exist as to the cause of that interruption. This dispute involves a consideration of plaintiff's second assertion and requires a denial of plaintiff's motion for the reason that the provision of the bargaining agreement quoted heretofore provides that "the association agrees that it will not, nor will the employees, members of the Association, participate in any strike, slowdown, work stoppage or interruption of service *called* for any purpose or reason whatsoever" (emphasis added). Therefore, in order for an interruption of service to constitute an actionable breach of this agreement, it must appear that the interruption was *called* by the Association, or by some one acting with authority on its behalf. Plaintiff admits that several of the witnesses whose depositions were taken were actually ill at the time of the interruption of operations, but raises the question of "the bona fides of four other employees who also contended that they were really sick". In questioning the credibility of the deponents and thereby requesting the Court to weigh and decide an issue of fact, plaintiff has clearly shown the existence of a material, disputed, factual matter, and has thus shown the inapplicability of summary judgment procedure to the instant case. Judge Fahy, speaking for the Court of Appeals for the District of Columbia in Dewey v. Clark, 1950, 86 U.S.App.D.C. 137, 180 F.2d 766 at page 772, summarizes the points to be considered in ruling on a motion for summary judgment as follows:

"(1) Factual issues are not to be tried or resolved by summary judgment procedure; only the existence of a genuine and material factual issue is to be determined. Once it is determined that there is such an issue summary judgment may not be granted; (2) In making this determination doubts (of course the doubts are not fanciful) are to be resolved against the granting of summary judgment; (3) There may be no genuine issue even though there is a formal issue. Neither a purely formal denial nor, in every

2. See the Transcript of the depositions, pp. 13, 86, 152, 165, 171, 225, 239, 252, 258, 278, 292, 298, 321.

3. Ibid, pp. 104, 105.

4. Ibid, p. 73.

case, general allegations, defeat summary judgment. On this point the cases decided by this court must rest on their own facts rather than upon a rigid rule that an assertion and a denial always preclude the granting of summary judgment. Those cases stand for the proposition that formalism is not a substitute for the necessity of a real or genuine issue. Whether the situation falls into the category of formalism or genuineness cannot be decided in the abstract; (4) If conflict appears as to a material fact the summary procedure does not apply unless the evidence on one or the other hand is too incredible to be accepted by reasonable minds or is without legal probative force even if true; (5) To support summary judgment the situation must justify a directed verdict insofar as the facts are concerned."

While we think it is incredible that all of the employees were sick, we cannot say that the evidence indicating that the interruption of service was not called is too incredible to be accepted by reasonable minds, particularly in this isolated instance. However, if another interruption of service similar to this one should result in the future, it would certainly go a long way toward convincing us that the work stoppage was not spontaneous.

The motion for summary judgment will be denied.