WILKES–BARRE PUBLISHING
CO., Plaintiff,

v.

NEWSPAPER GUILD OF WILKES–
BARRE, LOCAL 120, et al.,
Defendants.

Civ. No. 79–1181.

United States District Court,
M.D. Pennsylvania.

Dec. 14, 1982.

Allan Kluger, Wilkes Barre, Pa., R. Eddie Wayland, King, Ballow & Little, Nashville, Tenn., for plaintiff.

Warren J. Borish, Philadelphia, Pa., Nancy Schiffer, and Donald Sugerman, Detroit, Mich., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Pursuant to an Order of a Third Circuit panel dated April 1, 1981, this action was stayed pending arbitration of the plaintiff-company's grievance against the defendant-union. *See Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120,* 647 F.2d 372 (3d Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982). The arbitration proceeded until May 11, 1982, when the arbitrator issued six subpoenas *duces tecum* directing the company and a number of its agents to produce various documents at the next hearing. The Company refused to comply, and the Union instituted the present motion to enforce the subpoenas in this court.

The Union argues that this court derives its authority to enforce the subpoenas "not only from the general powers granted by Section 301 [of the Labor-Management Relations Act], but also from Section 7 of the U.S. Arbitration Act ... and from the Pennsylvania Uniform Arbitration Act." The Company, on the other hand, contends that absent a pertinent contractual provision, labor arbitrators possess no power to issue legally-enforceable subpoenas. It argues that neither the federal nor the state arbitration statute applies to this case and that there is no common-law authority to support the issuance of a subpoena by an arbitrator. In addition, the Company asserts that even if arbitrators possess power to issue binding subpoenas, those issued in the present case are unenforceable because they are overbroad and request privileged information.

For the reasons set forth below, the court holds that labor arbitrators possess the power to issue enforceable subpoenas *duces tecum.* The court finds, however, that the motion to enforce the subpoenas must be denied in the present case until the arbitrator is given the opportunity to rule on the company's objections.

## FACTUAL BACKGROUND

The facts arising prior to the arbitration hearings in this case are set forth in the

Court of Appeals' opinion and will not be repeated here. *See* 647 F.2d at 374–76. After the present action had been stayed, the parties proceeded with the arbitration of their dispute without major incident until April 16, 1982. On that date, at the conclusion of an arbitration hearing, the Union indicated that it would present subpoenas *duces tecum* to the arbitrator for his signature. The following exchange ensued:

[The Arbitrator:] ... Now, from what has been said here today, I think there is going to be some issue involved as to whether or not the company is going to honor these subpoenas.

[The Company:] I do not think there is any question about that Mr. Arbitrator. And let me say that I really do not like to be in the position of having to go into that.

[The Arbitrator:] I generally sign the subpoenas when somebody asks for them, and then if you do not like it you fight it in court. And I guess that is the route that we will have to follow, if that is satisfactory.

[The Company:] Well, I do not know that is ... I am going to have to look at the Pennsylvania law on this. I looked· at it once but it has been a while; that if you sign it there is automatically .a presumption that you have determined that it is relevant and that you have determined that it is necessary for· a hearing.

. . . .

[The Union:] It is my understanding that we are entitled to have a subpoena issued for anything we want; that the employer is entitled ... to file with the court a motion to quash the subpoena. Or ... the employer can do nothing ... and then force us to go into court to have the subpoena enforced.

. . . .

[The Company:] Well, we appreciate the law according to [the Union], but we intend to look at it ourselves ... so long as it is understood and clear on the record that you are making no evaluation as to the propriety of the subpoena

or the subpoenaed information as it relates to this case.

[The Arbitrator:] Well, I would be willing to state that on the record.

[The Union:] What? Why should you state that on the record?

*See* Transcript of Proceedings, April 16, 1982, at 194–96, attached to Plaintiff's Brief in Opposition, Document No. 53 of the Record. The parties then argued the question of relevance to the arbitrator. Eventually, the parties agreed that the Union would send the subpoenas to the arbitrator and provide a copy to the Company.· The Company would then be given the opportunity to investigate the applicable law to determine whether a presumption of relevance would attach if the arbitrator signed the subpoenas. If such a presumption attached, the company then would be able· to object to the arbitrator's issuance of the subpoenas. ·

On May 6, 1982, the company sent a letter to the arbitrator stating that it had received copies of the subpoenas, and that it had decided to object to their issuance on the ground that "[t]he documents sought are absolutely irrelevant and immaterial" to the issue at hand. *See* Letter from R. Eddie Wayland to Professor Robert F. Koretz, dated May 6, 1982, attached to Plaintiff's Brief in Opposition, Document No. 53 of the Record. Notably, there was no mention in this letter of the "presumption of relevance" discussed at the hearing. The arbitrator signed the subpoenas, the company refused to ·comply, and the Union filed the present motion in this court.

## THE FEDERAL ARBITRATION STATUTE

■ Section 7 of the United States Arbitration Act provides that arbitrators "may summon in writing any person to attend [the hearing] ... and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7 (1976). Upon a party's refusal to comply, enforcement of the subpoena may be had via a petition in the United States

District Court for the district in which the arbitrator sits. *Id.* It is clear, therefore, that if the statute applies in the present case, the union is entitled to enforcement of the subpoenas *duces tecum.* *See, e.g., Great Scott Supermarkets, Inc. v. Local Union No. 337, International Brotherhood of Teamsters, Chauffers and Warehousemen of North America,* 363 F.Supp. 1351, 1353 (E.D.Mich.1973); *Local Lodge 1746, International Association of Machinists and Aerospace Workers v. Pratt & Whitney,* 329 F.Supp. 283, 1286 (D.Conn.1971).

The United States Supreme Court, however, has never expressly held that the federal statute applies to labor arbitrations. *Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293, 1297 (9th Cir.1982). In addition, the lower federal courts are divided on this issue, *e.g., Chauffers, Teamsters, Warehousemen and Helpers, Local Union No., 135 v. Jefferson Trucking Co.,* 628 F.2d 1023, 1026 (7th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981); *Hughes-Bechtol, Inc. v. West Virginia Board of Regents,* 527 F.Supp. 1366, 1378 n. 2 (S.D.Ohio 1981). *Compare Electronics Corp. v. International Union of Electrical, Radio and Machine Workers, AFL–CIO Local 272,* 492 F.2d 1255, 1258 (1st Cir.1974) *and Petro Scalzitti Co. v. International Union of Operating Engineers, Local No. 150,* 351 F.2d 576, 579–80 (7th Cir.1965) *with Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1227 n. 18 (3d Cir.1969), and there has been a certain amount of confusion within this circuit concerning the statute's applicability to arbitration clauses in collective bargaining agreements. *Compare Newark Stereotypers' Union Local No. 18 v. Newark Morning Ledger Co.,* 397 F.2d 594, 596 & n. 2 (3d Cir.), *cert. denied,* 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968) *with Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d at 1127 n. 18.

The source of this uncertainty appears to be the statute's proviso that nothing in the Act "shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. In *Amalgamated Ass'n of Street, Electric Ry.*

*and Motor Coach Employees, Local 1210 v. Pennsylvania Greyhound Lines, Inc.,* 192 F.2d 310 (3d Cir.1951), the Third Circuit considered the question whether the Act provided the federal courts with power to enforce arbitration clauses in collective bargaining agreements. The court observed that the Act was passed during an era in which there was "[w]idespread dissatisfaction with compulsion from the federal bench in labor disputes." *Id.* at 313. Hence, the court stated, it was reasonable to conclude that Congress did not wish to create "pointless friction in an already sensitive area" by permitting the Act to apply to labor agreements. *Id.* The court concluded, therefore, that the exclusion regarding "contracts of employment" was intended to forestall the statute's application in cases involving labor agreements covering workers engaged in interstate commerce. *Id.* at 313–14.

The court refined its analysis two years later in *Tenney Engineering Inc. v. United Electrical Radio & Machine Workers, Local 437,* 207 F.2d 450 (3d Cir.1953), by focusing upon the type of labor agreement excluded from the operation of the statute. The court noted that the Act was drafted to exclude the contracts of those workers "engaged in" interstate commerce. *Id.* at 452. Observing that the statute had been drafted in the 1920's—an era in which Congress' commerce power had not yet been fully explained and developed, *see, e.g., Hammer v. Dagenhart,* 247 U.S. 251, 275–76, 38 S.Ct. 529, 532–533, 62 L.Ed. 1101 (1918)—the court concluded that the Act's exclusion applied only to those collective bargaining agreements covering "employees engaged in interstate transportation or in work so closely related to it as to be practically a part of it." 207 F.2d at 453 (footnote omitted).

After the *Pennsylvania Greyhound* and *Tenney Engineering* cases had been decided, it appeared clear that the federal arbitration statute would provide a jurisdictional basis for the enforcement of arbitration clauses in all labor agreements except for those covering transportation workers. Af-

ter the landmark case of *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957), however, it quickly became apparent that the federal courts would no longer be required to resort to the U.S. Arbitration Act to enforce arbitration clauses in collective bargaining agreements. In *Lincoln Mills,* the Supreme Court held that section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, not only provides the federal courts with jurisdiction to entertain suits for violation of collective bargaining contracts, but also authorizes them "to fashion a body of federal law for the enforcement of these ... agreements and includes within that federal law specific performance of promises to arbitrate grievances." 353 U.S. at 450–51, 77 S.Ct. at 914–915. Notably, the *Lincoln Mills* Court did not rely upon the federal arbitration statute in reaching its result. Justice Frankfurter, dissenting in *Lincoln Mills,* commented:

In 1925, Congress passed the United States Arbitration Act . . ., making executory agreements to arbitrate specifically enforceable in the federal courts, but explicitly excluding "contracts of employment" of workers engaged in interstate commerce from its scope. Naturally enough, I find rejection, though not explicit, of the availability of the Federal Arbitration Act to enforce arbitration clauses in collective bargaining agreements in the silent treatment given that Act by the Court's opinion. If an Act that authorizes the federal courts to enforce arbitration provisions in contracts generally, but specifically denies authority to decree that remedy for "contracts of employment," were available, the Court would hardly spin such power out of the empty darkness of § 301. I would make this rejection explicit, recognizing that when Congress passed legislation to enable arbitration agreements to be enforced by the federal courts, it saw fit to exclude this remedy with respect to labor contracts.

*Id.* at 466, 77 S.Ct. at 925 (Frankfurter, J., dissenting).

Notwithstanding the *Lincoln Mills* Court's "silence," and Justice Frankfurter's comments regarding the federal statute, the Third Circuit continued to apply the Arbitration Act to labor agreements, albeit intermittently. *See, e.g., Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 397 F.2d at 596 & n. 2. *But see Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d at 1127 n. 18. Recently, in *Service Employees International Union, Local Union No. 36 v. Office Center Services, Inc.,* 670 F.2d 404 (3d Cir.1982), the court discussed the arbitration statute's rather checkered history in the field of collective bargaining, concluding that "there is a serious question" whether it "retains any vitality" with respect to labor contracts. *Id.* at 406 n. 6 (dictum). The court surveyed a number of recent cases in which it had enforced arbitration agreements by looking to section 301 rather than the arbitration statute. These decisions, the court stated, "reflect the advancing lifelessness of the [Arbitration] Act in labor arbitration." *Id.*

The Company in the present case argues that the Union cannot invoke the federal arbitration statute to enforce the instant subpoenas in light of the Act's waning significance in labor cases. The Company relies heavily upon the Third Circuit's most recent statements in *Service Employees* and emphasizes that "the court's direction and implication are clear. The [Act] is inapplicable to a suit involving a collective bargaining agreement under Section 301." *See* Plaintiff's Brief in Opposition to the Motion at 14, Document No. 53 of the Record. Although the Company argues that "this conclusion is inescapable," it concedes that the *Service Employees* court "stopped short" of overruling prior Third Circuit authority holding that the statute applied to labor contracts covering workers not directly engaged in interstate commerce. Although a strong case can be made for the proposition that the *Service Employees* case signals *rejection* of the arbitration statute in labor cases, this court observes that a convincing argument can be made for the view that the Third Circuit's comments indicate merely that resort to the Arbitration

Act is *unnecessary* in light of the law developed under section 301 of the Labor Management Relations Act.

If one message emerges clearly from the *Service Employees* court's statements regarding this question, it is that a decision by this court to enforce the subpoenas on the strength of the Arbitration Act alone will not be free from doubt until the Third Circuit is presented with the opportunity to decide the question directly. Equally apparent, however, is that a decision refusing to enforce the subpoenas on the ground that the Arbitration Act does *not* apply would effectively overrule prior Third Circuit authority—a course this court must decline to take. The *Service Employees* opinion offers a third alternative which appears to represent the most sound approach—to examine the scope of section 301 of the Labor Management Relations Act with a view toward determining whether that statute confers upon this court the authority necessary to enforce the subpoenas.

## SECTION 301 OF THE LMRA

In the *Lincoln Mills* case, the Supreme Court described the extent to which the courts may "fashion a body of federal law" under the aegis of section 301:

> The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem.

353 U.S. at 457, 77 S.Ct. at 918 (citation omitted). Pursuant to the broad mandate of *Lincoln Mills*, then, this court must examine national labor policy to determine whether judicial enforcement of an arbitrator's subpoena is necessary to effectuate that policy.

■ A fundamental tenet of federal labor policy is that grievance arbitration is the "desirable method" for the resolution of disputes arising out of a collective bargaining agreement. 29 U.S.C. § 173(d); *see, e.g., United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 566–68, 80 S.Ct. 1343, 1345–1346, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Indeed, arbitration is now characterized as "the central institution in the administration of collective bargaining contracts." *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 252, 90 S.Ct. 1583, 1593, 26 L.Ed.2d 199 (1970). It is logical to assume, therefore, that a decision to enforce an arbitrator's subpoena will promote the goals of labor policy if it will foster the effective operation of arbitration machinery.

Initially, the court observes that many state arbitration acts permit arbitrators to issue legally enforceable subpoenas. Bedikian, *Use of Subpoenas in Labor Arbitration: Statutory Interpretations and Perspectives,* 1979 Dct.C.L.Rev. 575, 576 n. 2; *see, e.g.,* Pa. Uniform Arbitration Act, 42 Pa.Cons.Stat.Ann. § 7309 (Purdon 1982). Although state law is not binding in this area, the Supreme Court has recognized its use as a means to arrive at a coherent formulation of federal labor policy. *Textile Workers v. Lincoln Mills,* 353 U.S. at 457, 77 S.Ct. at 912. Similarly, although the court assumes that the federal statute does not "apply" for purposes of this discussion, the Arbitration Act's provision for arbitral subpoena power also provides guidance in labor cases. *Engineers Association v. Sperry Gyroscope Co.,* 251 F.2d 133, 136 (2d Cir.1957) *cert. denied,* 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958); *cf. Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d at 1127 & n. 18 (federal statute provides useful analogy in labor cases). Since the federal and state statutes were enacted to quell the hostility of the courts toward arbitration, and since that hostility certainly "has no place" in the sphere of labor arbitrations, *United Steel-*

*workers v. Warrior & Gulf Navigation Co.,* 363 U.S. at 578, 80 S.Ct. at 1350, these statutes provide significant guidance for resolution of the issue before this court.

The prospect of permitting the use of discovery procedures in labor arbitrations has been the subject of considerable commentary. *See, e.g.,* Bedikian, *supra;* French, *Arbitral Discovery Guidelines for Employers,* 50 U.M.K.C.L.Rev. 141 (1982); Jones, *The Accretion of Federal Power in Labor Arbitration—The Example of Arbitral Discovery,* 116 U.Pa.L.Rev. 830 (1968). These authorities generally agree that permitting discovery in labor arbitrations would further the proarbitration posture of federal labor policy. Bedikian, *supra,* at 600–01; Jones, *supra,* at 885, 887; *cf.* French, *supra,* at 163–64 (discussing discovery in context of unfair labor practice charges). Nevertheless, these articles raise a number of issues which must be considered before endorsing the view that labor arbitrators should be permitted to issue binding subpoenas.

■ First, it has been stated that the use of discovery mechanisms, like subpoenas, might be inconsistent with the rather informal nature of arbitrations. Arbitrations, after all, are not judicial proceedings, and one who agrees to arbitrate a dispute necessarily "relinquish[es] the right to certain procedural niceties which are normally associated with a formal trial." *Burton v. Bush,* 614 F.2d 389, 390 (4th Cir.1980). Indeed, it is arguable that a court which "thrusts" discovery into the arena of arbitration deprives a party of one of the most attractive incidents of his agreement to arbitrate—a rapid and inexpensive way to resolve the dispute. Bedikian, *supra,* at 597; Jones, *supra,* at 835. The view that the intent of a party might somehow be frustrated by denying him this benefit of his bargain has been answered by some who have posited that the arbitration agreement "strongly implies a contractual obligation to disclose" needed information. *See* Jones, *supra,* at 836–37.

This, however, does not sufficiently undercut the argument that "[t]he adoption of formal discovery might well chill the free flow of information and unduly formalize rather than simplify labor arbitration." Bedikian, *supra,* at 598; *cf. Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 59, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974) ("it is the informality of arbitral procedure that enables it to function as an efficient, inexpensive, and expeditious means for dispute resolution"). Nevertheless, in the present case, it is unnecessary to debate the question whether "formal discovery" would hamper the policy favoring arbitration, for the issue at bar concerns only one narrow form of discovery—subpoenas issued by an arbitrator. If one views the issuance of a subpoena by an arbitrator as a statement by him that further information is needed to provide a full and fair hearing on the merits, it is not difficult to see that enforcement of the subpoena would further federal labor policy.

■ In addition, the Supreme Court has made it abundantly clear that section 8(a)(5) of the National Labor Relations Act imposes upon a party to a collective bargaining agreement the obligation to disclose information in some circumstances. *See, e.g., NLRB v. Truitt Mfg. Co.,* 351 U.S. 149, 153–54, 76 S.Ct. 753, 756–757, 100 L.Ed. 1027 (1956). One such circumstance is when a union needs information in order to prepare a grievance for submission to an arbitrator. *See, e.g., Detroit Edison Co. v. NLRB,* 440 U.S. 301, 303, 99 S.Ct. 1123, 1125, 59 L.Ed.2d 333 (1979); *NLRB v. Acme Industrial Co.,* 385 U.S. 432, 436, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967). Hence, an employer can be found guilty of an unfair labor practice upon refusing to provide information necessary for the resolution of a grievance submitted to an arbitrator. *See, e.g., Chesapeake and Potomac Telephone Co. v. NLRB,* 687 F.2d 633, 638 (2d Cir. 1982). Furthermore, it appears that the NLRB is permitted to find that a party's refusal to comply with an arbitrator's subpoena constitutes an unfair labor practice. *Id.; cf. Drivers, Chauffers, & Helpers Local Union No. 639 v. Seagram Sales Corp.,* 531 F.Supp. 364, 366 (D.D.C.1981) (court sug-

gested that action to enforce arbitrator's subpoena may be preempted upon institution of unfair labor practice charges before NLRB).

■ Although the court does not express any view as to whether the Company's failure to comply with the subpoenas in the present case would constitute an unfair labor practice, *see San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959) (courts should defer to the expertise of the NLRB), the law developed under section 8(a)(5) of the NLRA indicates that enforcement of the subpoena under section 301 of the LMRA would be fully consistent with federal labor policy. Indeed, given the length of time required to enforce a party's disclosure obligations pursuant to section 8(a)(5), *see* Jones, *supra* at 839–40, this court believes that a failure to enforce an arbitrator's subpoena could very well frustrate the policy of section 301 favoring speedy disposition of grievances through arbitration. Whatever may be said for the adoption of "formal discovery procedures," *see supra,* it seems clear that the enforcement of a subpoena seeking materials necessary for the resolution of a grievance would not unduly hamper the goals of section 301. This seems particularly true in the present case where the actions of *both* parties have served to delay the arbitration proceedings to an unacceptable extent.[1]

Therefore, this court concludes that, pursuant to the authority embodied in section 301, subpoenas issued by labor arbitrators are, in appropriate circumstances, enforceable in the federal district courts.

ENFORCEMENT OF THE SUBPOENAS

■ In view of this court's holding that the federal judiciary may enforce the subpoenas issued by labor arbitrators, the question which must now be addressed is whether enforcement may be had in the present case. In this regard, it must be emphasized that this court's holding should not be interpreted by the parties as a license to engage in unbridled discovery. The union's argument before the arbitrator—that it is "entitled to have a subpoena issued for anything [it] want[s]"—must therefore be rejected. On the contrary, under this court's interpretation of section 301, the parties are not "entitled" to engage in unlimited discovery. This court holds only that an arbitrator may subpoena those materials he feels he must consider in resolving the issues presented to him. Of course, if a party must have access to the subpoenaed information in order to present intelligent arguments, the arbitrator may provide those materials. On the other hand, if the arbitrator feels that a party would use the information to delay the proceedings or to obfuscate the issues, it may be appropriate to subpoena the materials for an *in camera* inspection. *Cf. Local Lodge 1746, International Ass'n of Machinists & Aerospace Workers v. Pratt & Whitney,* 329 F.Supp. at 286 (ordering production of information for *in camera* inspection by arbitrator).[2]

■ Although the Union argues that the arbitrator found that the information sought in the present case was relevant, the court finds that even under the most liberal reading of the transcript of the hearing, the arbitrator made no such finding. Notably, the arbitrator expressly stated that he would be willing to place "on the record" that he was making no evaluation regarding the relevance of the subpoenaed material. It is not the function of this court to determine what an arbitrator would or should find relevant in resolving a dispute. *E.g., Bechtel Corp. v. Local 215 Laborers' International Union of North America, AFL–CIO,* 544 F.2d 1207, 1214 n. 8 (3d Cir.1976). Therefore, the court must deny

---

1. The Company has now moved to vacate the stay issued in this case, arguing that the extensive delay in resolving the dispute has frustrated the goals of section 301. Because this motion is not yet ripe for disposition, the court expresses no opinion on its merits.

2. If a party insists that it must obtain the subpoenaed information in order to participate meaningfully in the proceedings, it can, of course, institute NLRB proceedings. *NLRB v. Acme Industrial Co.,* 385 U.S. at 436–38, 87 S.Ct. at 568–569.

the motion for enforcement of the subpoenas until the arbitrator is given the opportunity to consider the relevance of the information sought and to rule on the Company's objections.

An appropriate Order will be entered.

### ORDER

In accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) The Arbitrator in the present case has authority to issue subpoenas *duces tecum.*

(2) The motion to enforce the subpoenas is denied on the present state of the record.

(3) This matter is remanded to the Arbitrator so that he may rule on the Company's objections to the subpoenas.