**IN THE MATTER OF THE ARBITRATION BETWEEN UNITED IN-DUSTRIAL WORKERS, SERVICE, TRANSPORTATION, PRO-FESSIONAL AND GOVERNMENT OF NORTH AMERICA, OF THE SEAFARERS' INTERNATIONAL UNION OF NORTH AMER-ICA, ATLANTIC GULF, LAKES AND INLAND WATERS DISTRICT AFL–CIO, (Local 16) o/b/o DONALD M. BOUTON, Petitioner**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, V.I. DEPARTMENT OF JUSTICE (Formerly Department of Law), Respondents**

Civil No. 90-300

District Court of the Virgin Islands

Div. of St. Thomas and St. John

April 22, 1992

BRENDA J. HOLLAR, ESQ., St. Thomas, V.I., *for petitioner*

PAUL GIMENEZ, ESQ., ALLEN POPPLETON, ESQ., Assistant Attorney Generals (Department of Justice), St. Thomas, V.I., *for respondents*

KAUFMAN, *Senior District Judge*[*]

## OPINION

Presently before this Court is a petition to vacate an arbitrator's award filed by petitioner Donald M. Bouton ("Bouton") and a motion to dismiss all of the said petitioner's quests for relief in this case, filed by respondent Government of the Virgin Islands ("Government"). Oral argument was heard by this Court during the March 25, 1991 Motion Day.[1] The Court has considered the parties' arguments made both orally, and through papers submitted prior and subsequent to the March 25, 1991 Motion Day.[2] For the following reasons, the Government's motion to dismiss, treated as a motion for summary judgment under Fed. R. Civ. P. 56 because documents other than pleadings are filed in this case, see Fed. R. Civ. P. 12(b), will be granted, and Bouton's motion to vacate will be denied.[3]

---

[*] Honorable Frank A. Kaufman, Senior United States District Judge for the District of Maryland, Sitting by Designation.

[1] Thereafter, the parties attended several conferences with this Court during which the parties discussed the scope of the underlying arbitrator's record and the possibility of narrowing issues, and filed additional memoranda and documents.

[2] The record before the Court includes, inter alia, (1) Bouton's petition to vacate; (2) the Government's motion to dismiss and memorandum of law; (3) Bouton's opposition to the Government's motion to dismiss; (4) the Government's response to Bouton's opposition to motion to dismiss; (5) Bouton's reply to the Government's response; (6) Bouton's April 2, 1991 authority for submission of record for judicial review; (7) the Government's memorandum in opposition to Bouton's authority for submission of record; (8) the parties' April 10, 1991 submission of Exhibits without agreement, however, as to whether and to what extent this Court can consider the same as a record of the Arbitrator's proceedings in view of the apparent unavailability of any complete, official transcript of those proceedings; (9) Bouton's April 17, 1991 memorandum of law; (10) the Government's April 29, 1991 memorandum in response to Bouton's memorandum; and (11) Bouton's supplemental memorandum of April 13, 1992.

[3] Both sides were notified that the Court would consider this case in a summary judgment context and were given the opportunity to file additional Rule 56

## I.

On March 20, 1987, Bouton was terminated from his position as Hearing Officer with the Virgin Islands Department of Justice, Division of Paternity and Child Support. That issue became the subject of arbitration pursuant to the collective bargaining agreement ("CBA") covering assistant attorneys general of that government agency. The Arbitrator determined that Bouton, at the time of his dismissal, did not occupy a position within the collective bargaining unit, and was entitled to no relief. Subsequently, in this Court, Bouton filed a petition to vacate the Arbitrator's award, and the Government filed its motion to dismiss.

## II.

Bouton was employed by the Virgin Islands Department of Law (now known as the Virgin Islands Department of Justice) in various legal positions from November 27, 1972 until March 20, 1987. On that latter date, when he was allegedly dismissed for cause, Bouton was serving as a Hearing Officer with the Government's Division of Paternity and Child Support. Bouton claims that prior to assuming his hearing officer position, he had arranged to take a "leave of absence" from his former position as an Assistant Attorney General at the Department of Justice, and that, under the CBA, he is entitled to resume that position.

During his approximately fifteen years of working with that department, Bouton served in several management positions by political appointment. Those positions were First Assistant Attorney General, Acting Attorney General and Attorney General. Bouton asserts that during the time period in which he served in each such appointed position, he took a "leave of absence" from his Assistant Attorney General position and that upon the completion of each post, he resumed his position as an Assistant Attorney General, and that he had a right again to resume that position on March 20, 1987.

On or about September 14, 1979, the Government and the United Industrial Workers of the Seafarers' International Union of North

---

materials. See Fed. R. Civ. P. 56(e); Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 284–85 (3rd Cir. 1991); Rose v. Bartle, 871 F.2d 331, 342 (3rd Cir. 1989); Castle v. Cohen, 840 F.2d 173, 179 (3rd Cir. 1988). Bouton availed himself of that opportunity; the Government did not.

America, Atlantic, Gulf, Lakes and Inland Water District, AFL–CIO ("the Union") agreed upon a list of certain Department of Law (now Department of Justice) employees deemed eligible to vote in a representative election. The parties agree that Bouton was determined to be eligible to vote and that he voted in an October 2, 1979 election without challenge. After the October 2 election, the Union was certified as the exclusive bargaining representative for a recognized Bargaining Unit ("Unit") consisting of certain Department of Law employees. Under that certification, all assistant attorneys general were included within the Unit. Excluded therefrom were the attorney general, office clerical staff and guards. Bouton's name remained on the Unit seniority list through March 20, 1987.[4]

On or about February 28, 1983, the Union and the Government entered into a second CBA. The parties agree that CBA became retroactively effective from October 1, 1982 until September 30, 1985. That CBA was further extended by agreement of the parties through March 20, 1987 until an unspecified date in 1990. The recognition clause of that second CBA states at Article I:

> *Section 1*: The Employer recognizes the Union as the sole and exclusive bargaining representative for all employees covered by this Agreement:
>
> All Assistant Attorneys-General

The Attorney General, First Assistant Attorney General, the Chiefs of Divisions are excluded from this recognition.

> *Section 2*: There shall also be excluded from this bargaining unit one attorney appointed to handle labor relations matters on a regular basis on behalf of the employer.
>
> *Section 3*: The parties will jointly petition P.E.R.B. [Public Employees Relation Board] for a clarification whether this bargaining unit includes all other attorneys employed by the Executive Branch to perform legal work who are not designated Assistant Attorneys General.[5]

In May 1986, by Act 5161, the Legislature established the Division of Paternity and Child Support within the Department of Law,

---

[4] Bouton asserts that he paid dues during that entire period, said dues being deducted from his payroll checks.

[5] A unit clarification petition, to determine whether Bouton is a hearing officer with the Division of Paternity and Child Support, is ostensibly still pending. At least, no notice of any decision in that regard by Public Employees Relation Board ("PERB") has been reported to this Court by the parties.

creating therein a hearing officer position. That act provided that the Hearing Officer was to conduct hearings and render decisions in paternity and child support cases, and that the Hearing Officer would serve a term of four years, subject to removal by the Governor. Although the Attorney General was directed to recommend candidates for Hearing Officer, the Governor was given the power to appoint as well as to remove the Hearing Officer.

On September 18, 1986, effective as of August 5, 1986, Bouton was appointed to a Hearing Officer position with the Division of Paternity and Child Support, and occupied that position until he was terminated in March 1987. At the time that he was so appointed, Bouton was working as an Assistant Attorney General.

Bouton claims that he commenced his Hearing Officer position after negotiating a leave of absence from his then current position as Assistant Attorney General. Bouton asserts that his leave of absence was negotiated with then Attorney General Leroy Mercer ("Mercer") and that that leave of absence arrangement was later acknowledged in writing by Mercer's successor, Attorney General Godfrey de Castro.

In reference to that arrangement, the Government states that Bouton sent a September 17, 1986 letter to Mercer in which Bouton set forth his alleged understanding of the terms of acceptance of his hearing officer position and of his rights later to resume his spot as an Assistant Attorney General. According to the Government, Bouton indicated that he understood that (1) his position as Assistant Attorney General would be filled; (2) he would be on a leave of absence from that position; and (3) upon conclusion of his service as Hearing Officer, Mercer would welcome Bouton to return to his position as an Assistant Attorney General, if such a position was vacant. Motion to Dismiss at 3. Mercer's signature and the word "agreed" appear at the bottom of that September 17, 1986 letter. The Government claims that both Mercer and Bouton knew that the agreement, in any event, was "personal" because Mercer had no authority to bind either the then Governor or any future Governors or any future Attorneys General. Id.

On January 7, 1987, Attorney Godfrey de Castro ("de Castro") assumed the position of Attorney General. Thereafter, Bouton was terminated for refusing to comply with a directive from de Castro requiring all male professional Department of Law employees to wear a coat and tie while on duty.

Prior to being terminated, the Government asserts that Bouton was warned several times concerning his failure to comply with this directive. Bouton filed a grievance under the CBA regarding de Castro's directive. A grievance hearing was held on February 22, 1987. That said grievance was denied on the grounds that Bouton was a Hearing Officer, was not covered by the CBA, and that even if he was covered by the CBA, de Castro's directive was appropriately issued pursuant to authority reserved to the employer by the CBA and Bouton had not complied therewith.

Bouton then filed, under the CBA, a demand for arbitration. In response, the Government refused to arbitrate, claiming that Bouton was not a member of the Unit. The Government also refused at that time to appoint Bouton to one of three vacant Assistant Attorney General positions, and rejected Bouton's claim pursuant to his interpretation, and his understanding, of his leave-of-absence arrangement. Bouton acknowledges that his particular position as Hearing Officer within the Division of Paternity and Child Support was created by statute in 1986. See V.I. Code Ann. tit. 16 § 354 (1991). However, Bouton asserts that other similar hearing officer positions existed prior to the creation of the Division of Paternity and Child Support Hearing Officer, and that the CBA in existence at the time of his dismissal did not exclude hearing officers.

Following the Government's refusal to arbitrate, Bouton filed a motion for a temporary restraining order in the Territorial Court of the Virgin Islands to compel arbitration. After that quest for relief was denied, Bouton amended his complaint to seek specific performance of the CBA. On April 8, 1987, the Territorial Court denied a motion to dismiss filed by the Government and granted relief to Bouton by referring five specific issues for arbitration. Those issues were the following:

 (1) Was Bouton an Assistant Attorney General at the time of his March 20, 1987 dismissal?

 (2) Was the Unit the exclusive certified bargaining agent for all Assistant Attorneys General?

 (3) Did the CBA of February 28, 1982 govern relations between the Government and the Unit?

 (4) Did Bouton's name appear on the eligibility list for voting and did he vote without challenge?

 (5) Was Bouton's dismissal an arbitrary and capricious action?

On June 25, 1987, Bouton filed an unfair labor practice complaint against the Government with PERB. Thereafter, the Government requested PERB to clarify the nature of Bouton's position with respect to the Unit. PERB, however, stayed its determination pending a disposition of the arbitration which Bouton had sought and obtained, as aforesaid. Bouton apparently has at no time objected to that stay. Seemingly, PERB has not taken further action in the proceeding Bouton filed on June 25, 1987, since that stay commenced. Nor, apparently, has either Bouton or the Government requested PERB to take any further action since that time.

On July 10, 1990, Arbitrator Jeffrey B. Tenner issued a decision denying the grievance asserted by Bouton. That decision by the Arbitrator is the subject of Bouton's instant petition to vacate, filed October 3, 1990, and the Government's subsequent motion to dismiss.

## III.

On February 21, 1991, Magistrate Judge Geoffrey W. Barnard of this Court ordered that the parties file with this Court the entire record before the Arbitrator. After several conferences with the parties,[6] this Court determined that the Arbitrator had disposed of the original record and had not retained any documents or notes from the arbitration proceeding.[7] Bouton requested that he be permitted to file copies of the record. That request was opposed by the Government. After substantial discussion,[8] and the filing of briefs by both parties, the Court asked the parties to meet, and as officers of the Court, to exercise all reasonable efforts to try to agree concerning the filing with this Court of copies of relevant and material parts of the record. Those papers were filed jointly by the parties with the Court on April 10, 1991. However, their status and effect in this case is not agreed upon by the parties.[9] Therefore, in that context, this Court is deciding this case as if such filing had not occurred and is not relying at all upon the same.

---

[6] Said conferences occurred on the record on March 25, 1991, April 5, 1991 and April 9, 1991.

[7] See also Verification of Non-Existence of Official Record of Arbitration Proceedings filed by both parties on April 9, 1991.

[8] Said discussion was held on the record.

[9] See supra n.2.

## IV.

The Government seeks dismissal of Bouton's petition to vacate the Arbitrator's award because of lack of subject matter jurisdiction, arguing that this Court does not have jurisdiction over Bouton's petition pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 9–11. ("FAA"). Bouton's petition seemingly asserts jurisdiction only under the FAA. However, Bouton has, since this case was instituted, contended that jurisdiction of this Court is also available under V.I. Code Ann. tit. 24, § 383. Accordingly, this Court will first consider whether it has jurisdiction under the FAA, next pass to the issue related to section 383,[10] and then discuss review under common-law principles.

The Government takes the position that the FAA applies to written contractual provisions to arbitrate relating to maritime transactions and to interstate or foreign commerce, and that because the instant CBA does not involve a maritime transaction or interstate commerce or foreign commerce, the FAA is not applicable.[11] While

---

[10] Bouton has not amended his petition to reflect in assertion of jurisdiction under V.I. Code Ann. tit. 24, § 383. Rather Bouton has asserted that jurisdiction is present under § 383 in his opposition to the Government's motion to dismiss, his reply to the Government's response to petitioner's opposition to dismissal and in his April 17, 1991 memorandum of law at 6. The Government apparently does not disagree with Bouton's contention that jurisdiction may be had under § 383; rather the Government argues that as and when filed under that section, Bouton's petition is untimely filed. In any event, this Court, in the context of the procedural and other issues, will consider all of the bases for the jurisdiction of this Court asserted by Bouton in one or more documents filed in this case.

[11] 9 U.S.C. § 2 provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 1 provides in pertinent part that commerce is

among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of sea-

207

the FAA is applicable to the Virgin Islands, see Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc., 11 V.I. 258, 499 F.2d 1391, 1393 (3d Cir. 1974), the case law does not clearly teach whether it is or is not applicable in the context of collective bargaining agreements of the type involved herein.[12]

As to V.I. Code Ann. tit. 24, § 383 (the Virgin Islands Public Employee Relations Act ("PERLA")), the Government claims that the only means of review under Section 383 is pursuant to the general writ of review statute and that under that statute, Bouton's petition is time barred.[13] Section 383(a) states:

> Suits for violation of contracts between a public employer and an exclusive representative, or between labor organizations, may be brought in any court of this Territory having jurisdiction of the parties, including the Federal District Court, without respect to the amount in controversy or without regard to the citizenship of the parties.

Further, the Government contends that the only vehicle for reviewing an arbitrator's award is by writ of review. See V.I. Code Ann. tit. 5, § 1421 (1982) and V.I. Code Ann. tit. 5, App. V, Rule 11 (1982).[14] Under V.I Code Ann. tit. 5, App. V, Rule 11, petitions for

---

men, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

[12] "A certain amount of confusion [exists] within this circuit concerning the [FAA's] applicability to arbitration clauses in collective bargaining agreements." Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120, 559 F. Supp. 875, 878 (M.D. Pa. 1982). See Service Employees Int'l Union, Local No. 36 v. Office Center Servs., 670 F.2d 404, n.6 (3rd Cir. 1982); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1124 n.18 (3rd Cir. 1969); Tenny Eng'g, Inc. v. United Elec. Radio & Mach. Workers, Local 347, 207 F.2d 450 (3rd Cir. 1953) (en banc); Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees, Local 1210 v. Pennsylvania Greyhound Lines, Inc., 192 F.2d 310 (3rd Cir. 1951).

[13] The Government, citing to Gomez v. Government of the Virgin Islands, 882 F.2d 733 (3d Cir. 1989), also asserts that section 383 applies only to so-called "hybrid" suits filed by an employee against his employer for breach of contract, and against his union for breach of fair representation. That assertion, along with certain others delineated by the parties, does not require resolution in this case.

[14] V.I. Code Ann. tit. 5, § 1421 (1982) provides:

Any party to any proceeding before or by any *officer, board, commission, authority,* or *tribunal* may have the decision or determination thereof reviewed for

writ of review "shall be filed within 30 days after the date of the decision or determination complained of . . . ." Because the Arbitrator's decision was rendered on July 10, 1990 and Bouton's petition was filed on October 3, 1990, the Government asserts that Bouton's action must be dismissed as untimely. In response, Bouton argues that, with respect to Section 383, this Court should utilize one of the limitations periods contained within the general Territorial statute of limitations, V.I. Code Ann. tit. 5, § 31 (1991).

■■ The question arises as to whether the writ of review provisions set forth in section 1421 apply to the decision of a private arbitrator. The answer to that question is not free from doubt.[15] However, this Court need not decide any questions concerning the applicability in this case of Section 383 or of the FAA. That is because whether this Court has or does not have jurisdiction under the FAA or under Section 383, Bouton can seek vacation of the Arbitrator's award under common-law principles, and is not confined to the FAA or to Section 383. While Bouton has not explicitly sought relief other than under the FAA and Section 383, he seemingly seeks to have this Court reach the merits on any basis which is available. If the Government is correct in its assertions, then (1) the FAA is not applicable, (2) Section 383, while applicable, is barred from use by plaintiff's failure to seek a writ of review on or before August 9, 1990, and (3) Bouton has no avenue open to him upon which to proceed in this Court other than by way of common-law principles. If the latter basis is utilized, then seemingly plaintiff has proceeded well within the general limitations period by instituting this suit on October 3, 1990—less than ninety days after the Arbitrator's July 10, 1990 decision. Further since plaintiff is re-

---

errors therein as prescribed in this chapter and rules of court. Upon the review, the court may review any intermediate order involving the merits necessarily affecting the decision or determination sought to be reviewed.
(Emphasis added).

V.I. Code Ann. tit. 5, App. V, Rule 11(a) (1982), which sets forth the procedures for filing a petition for writ of review, provides in pertinent part:

A writ of review may be allowed by the court upon the petition of any person aggrieved by the decision or determination of an officer, board, commission, authority or tribunal.

[15] See Caribe Constr. Co. v. Penn, 342 F.2d 964, 968 (3rd Cir. 1965); Crispin v. Government of the Virgin Islands, 1986 St. Croix Supp. 130 n.4 (D.V.I. September 30, 1988), in review of the Territorial Court's decision in 23 V.I. 15, 18 (Terr. Ct. 1987); Donastorg v. G.E.S.C, 285 F. Supp. 111, 112 (D.V.I. 1968).

questing vacation of an arbitrator's award—i.e., equitable type of relief—laches, rather than limitations, are seemingly involved. See Transnitro v. M/V Wave, 943 F.2d 471 (4th Cir. 1991) (equitable principles applied in a somewhat different context in a case involving court review of an arbitrator's award). If laches apply, the Government can hardly prevail upon the assertion of such a defense, since no prejudice whatsoever to the Government appears to have occurred because Bouton instituted this suit on October 3, 1990 rather than on an earlier date.[16]

One other issue of a jurisdictional nature remains to be addressed. As recited supra, it was the Territorial Court which ordered, as Bouton prayed, the arbitration. Thus, it could be argued that this Court should require Bouton to address his within motion to vacate the Arbitrator's award to the Territorial Court. However, Bouton seemingly has a right to seek such relief in this Court.[17] In any event, since he initiated this case and asks the Court to reach the merits of his contentions, Bouton can hardly be heard meritoriously to complain about this Court reaching the merits.[18]

## V.

The Arbitrator determined that "Bouton was not an Assistant Attorney General at the time of his dismissal," that he was a "Hearing Officer at that time," and that "[i]nclusion in a bargaining unit does not go to the person but rather to the position held by that

---

[16] "The elements of the defense of laches are '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" Benoit v. Panthaky, 780 F.2d 336, 339 (3rd Cir. 1985) (quoting EEOC v. Great Atlantic & Pacific Tea Co., 735 F.2d 69, 80 (3rd Cir. 1984)).

[17] See Revised Organic Act of the Virgin Islands, codified at 48 U.S.C. § 1612(b) (1987): "[T]he District Court of the Virgin Islands shall have general original jurisdiction in all causes in the Virgin Islands . . . ." But see V.I. Code Ann. tit. 4 § 77(a) (1991): "Unless transferred by a judge of the district court, all civil cases originally filed in the territorial court shall be tried and concluded in that court." That latter statute would not appear to deprive this Court of jurisdiction in the within case in which Bouton seeks vacation of the arbitrator's award. The Territorial Court's April 8, 1987 Order referring five specific issues for arbitration has been complied with, and apparently nothing with regard to this case is currently pending in that Court.

[18] Also, the interests of judicial economy would appear to weigh heavily against this Court's requiring, at this time, that Bouton return to the Territorial Court, and cause that Court to wade through many of the mass of issues presented by the parties to this Court.

person." Arbitrator's Opinion and Award, July 10, 1990, pp. 25–26. In his carefully constructed 28-page Opinion and Award, the Arbitrator wrote:

> The preliminary issue, as agreed by the parties, is whether or not Bouton was covered by the collective bargaining agreement at the time of his discharge. I have determined that he was not.

Arbitrator's Opinion and Award, at p. 20.

After a review in depth of the applicable facts and law, the Arbitrator concluded:

> Therefore, for the reasons set forth above, I have determined that Bouton was not covered by the collective bargaining agreement at the time of his discharge.

> It does not matter whether or not Bouton was on a leave of absence from a position of Assistant Attorney General at the time of his discharge. He was not in the unit when he was discharged and, therefore, the collective bargaining agreement did not apply to him at that time.

> I do not have the authority to determine the effect, if any, of the letter which Bouton wrote to then Attorney General Mercer and which the latter signed and marked "Agreed." That is not part of the collective bargaining agreement and it is, therefore, beyond my purview and authority.[19]

---

[19] In this court, Bouton contends, inter alia, that:

> The Arbitrator's award is incomplete and imperfect, because he failed and refused to determine whether the grievant was 'on a leave of absence' from his position as Assistant Attorney General, at the time of his discharge, and by side-stepping that crucial issue, the Arbitrator's determination that the grievant was *not* within the collective bargaining unit at the time of his discharge has no factual basis.

Plaintiff's Petition to Vacate, at p. 9 (emphasis in original). Bouton takes issue with the Arbitrator's determination that it is immaterial whether Bouton was on leave of absence as an Assistant Attorney General. It may be that Bouton can claim the right, even if he was only occupying a Hearing Officer's position at the time of his alleged insubordination, and even if he was so insubordinate, to become again, as of March 20, 1987, an Assistant Attorney General. But any such right would appear to flow from Bouton's September 17, 1986 letter to Mercer, and from events related to that letter, and not to spring in any way from the CBA. It is also to be noted that the Arbitrator was not asked by the Territorial Court to answer whether Bouton had any such right and that

211

I turn now to the five specific questions set forth in Judge Smock's April 8, 1988 order that this matter be submitted to final and binding arbitration.

First, Bouton was not an Assistant Attorney General at the time of his dismissal. He was a Hearing Officer at that time, having been appointed as such upon the recommendation of the Attorney General by Governor Juan Luis. The NOPA dated September 4, 1986 indicates his appointment for the four years from August 5, 1986 through August 5, 1990, an appointment which is consistent with the provisions of Act 5161.

Second, the United Industrial Workers of the Seafarers International Union was the exclusive bargaining agent for all Assistant Attorneys General. It was not, however, the exclusive bargaining agent for Hearing Officers appointed pursuant to Act 5161.

Third, the collective bargaining agreement dated February 28, 1983 governs relations between the Government and the unit for the term of the agreement, including its extensions. That agreement, however, does not govern relations between the Government and Hearing Officers appointed pursuant to Act 5161 because such Hearing Officers are not included in the unit.

Fourth, Bouton's name did appear on the eligibility list used in the election of the bargaining unit and he voted without challenge in that election. As stated above, however, these facts are not significant at this time because Bouton was no longer an Assistant Attorney General at the time of his discharge. He was eligible to vote at the time of the election because he was an Assistant Attorney General at that time. When his position changed to that of a Hearing Officer, however, he left the bargaining unit. Inclusion in a bargaining unit does not go to the person but rather to the position held by that person. If the position is in the bargaining unit, then the person is in the unit. The reverse is not necessarily true.

the Arbitrator carefully and specifically did answer each of the five questions as required by the Territorial Court. Nor does the record indicate that Bouton asked the Territorial Court to refer any questions to the Arbitrator other than the five questions, or that Bouton objected to the substance or form of any of those five questions.

Fifth, I did not hear the merits of this case. I can state, however, based upon Bouton's own testimony and the exhibits which he introduced, that the dismissal of Bouton was not arbitrary or capricious. This is a far lower standard than the "just cause" standard set forth in the collective bargaining agreement, but, as stated, Bouton was not covered by that agreement at the time of his dismissal.

It must be clearly understood that I am not making a "just cause" determination under the collective bargaining agreement. That standard is a much more rigorous standard than "arbitrary and capricious." As stated, the parties did not present their cases on the merits of this grievance to me so I am in no position to pass upon the "just cause" under the collective bargaining agreement.

It is apparent, however, to the extent that this is relevant [(]I am addressing this question only because it is included in Judge Smock's order[)],[20] that the action in removing Bouton was not arbitrary and capricious. He received notice of the directive. He failed to comply with it. He was warned orally. He still failed to comply. He was given a written warning by his supervisor. He still failed to comply and he filed a grievance. He had a hearing before the Acting Attorney General. His grievance was denied and the Acting Attorney General told him, in writing, that if he did not comply, the [sic] would take appropriate disciplinary action which would include discharge. Bouton testified that on March 4, 1987, after the grievance had been denied and he had been warned of further action if he did not comply, the Acting Attorney General came six blocks over to Bouton's office and discussed the matter with him. Bouton told

---

[20] In his opinion and award the Arbitrator noted:
 The parties agreed that the issues should be bifurcated. It took the full day on April 30, 1990 to hear the evidence regarding the procedural issue [whether Bouton was covered by the CBA]. This decision shall deal only with that issue.
 Arbitrator's Opinion and Award at 2.
 In this Court, Bouton complains that the Arbitrator violated the bifurcation agreement. However, the Arbitrator clearly and fairly explained why he addressed the "arbitrary and capricious" issue to the extent which he did. But even if all statements by the Arbitrator with regard to the "arbitrary and capricious" issue are completely disregarded, the Arbitrator's decision is entitled to the respect accorded to it in Part VI of this opinion.

him that he would not comply. At that point, the Acting Attorney General asked him to consider retirement. Bouton responded within the next day or so that he would not retire. It was thereafter that the Acting Attorney General recommended to the Governor that Bouton be discharged. Based upon this evidence, and in the absence of any other information, it appears that Bouton's dismissal was not arbitrary and capricious.

Arbitrator's Opinion and Award, at pp. 24–27.

## VI.

 Even if each and all of the factual assertions stated by Bouton are accepted, the Arbitrator's determination is binding upon this Court. That is so because if this case is decided as brought appropriately and timely under the FAA or under common-law principles, "[t]he arbitrator's award must be enforced 'so long as it draws its essence from the collective bargaining agreement.'" Teamsters Union Local No. 115 v. DeSoto, Inc., 725 F.2d 931, 934 (3rd Cir. 1984) (quoting United Steelworkers of America v. Enterprise Wheel Car Corp., 363 U.S. 593, 597 (1960)). In so writing, Judge Garth noted that "[f]ederal courts have a very limited scope of review when passing on the validity of a labor arbitration award" in an appeal brought under the FAA. Id. To the same general effect, see the views expressed by Judge Nygaard in Tanoma Mining Co., Inc. v. Local Union No. 1269, United Mine Workers of America, 896 F.2d 745 (3rd Cir. 1990), and by former Chief Judge Gibbons in United States Postal Service v. National Association of Letter Carriers, 839 F.2d 146 (3rd Cir. 1988). Indeed if the FAA is applicable, a court may vacate an arbitrator's award only upon a ground specified in that Act, and if common-law principles are applicable, only if the arbitrator acted in manifest disregard of the law, or if the award is ambiguous, or otherwise incomplete or contradictory. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jack Bobker, 808 F.2d 930 (2d Cir. 1986); United States Steel & Carnegie Pension Fund v. Dickinson, 753 F.2d 250 (2d Cir. 1985); Virgin Islands Nursing Association's Bargaining Unit v. Schneider, 668 F.2d 221, 223 (3rd Cir. 1981).[21] While Bouton contends that the Arbitra-

---

[21] The Second Restatement of the Law of Contracts, §§ 345(e), 366 Illustration 3 and the Restatement of Judgments, § 84 deal with preclusive and other effects

tor's Award is incomplete and failed to answer all of the questions referred by the Territorial Court in such a way as to address and to determine all relevant issues, a review of the Arbitrator's Award and the entire record in this case, giving to Bouton the benefit of all reasonable factual inferences, reveals that the Arbitrator determined that Bouton's position as a Hearing Officer was not covered by the collective bargaining agreement and that Bouton was not entitled to relief. Further, the Arbitrator's discussion was specific and complete, and dealt with each and all of the questions referred to the Arbitrator by the Territorial Court. Accordingly, the Arbitrator's decision should not be vacated by this Court.

## VII.

In a separate Order of even date herewith Bouton's motion to vacate will be denied, the Government's motion to dismiss will be granted, and judgment will be entered for the Government.

## ORDER

Bouton's motion to vacate is hereby denied, the Government's motion to dismiss is hereby granted, and judgment is hereby entered for the Government. It is so ORDERED this 22nd day of April, 1992.

---

of awards by arbitrators. Neither speaks with regard to court review of such awards. But the approach in the Restatements suggests that the respect, which is accorded to such awards by the FAA and by the case law in jurisdictions other than the Virgin Islands, in connection with court review of arbitrators' awards, should be accorded in a case such as this one if common-law principles apply. In that regard, the importance accorded to the Restatement in the Virgin Islands is to be noted. See V.I. Code Ann. tit. 1 § 4.